No. 75,791

STATE OF KANSAS, *Appellant,* v. GREG A. PROFFITT, *Appellee.*

930 P.2d 1059

Opinion filed January 24, 1997.

*Doyle Baker,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellant.

*Steven D. Mank,* of The Law Offices of Leslie F. Hulnick, P.A., of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: Greg A. Proffitt was charged with operating a motor vehicle while his driving privileges had been revoked as a habitual violator pursuant to K.S.A. 1995 Supp. 8-287. The district court dismissed the complaint based upon what it termed "vagueness" in K.S.A. 1995 Supp. 8-288 as to how a habitual violator's driving privileges could be restored. The State appeals pursuant to K.S.A. 22-3602(b)(1).

On November 23, 1991, the Reno County District Court had declared defendant to be a habitual violator. The statutory scheme in effect at the time, relative to habitual violators, provided in pertinent part:

"Whenever the files and records of the division shall disclose that the record of convictions of any person is such that the person is an habitual violator, as prescribed by K.S.A. 8-285 the division forthwith shall certify a full and complete abstract of such person's record of convictions to the district or county attorney of the county where such person resides, as disclosed by the records of the division, or if such person is a nonresident, to the district attorney of Shawnee county. Upon receiving said abstract, the district or county attorney forthwith shall commence prosecution of such person in the district court of such county, alleging such person to be an habitual violator. Such court shall cause a summons to be served on the accused, ordering the accused to appear before the court at a time and date stated therein to show cause why he or she should not be convicted of being an habitual violator. At the time and date stated in the summons, the court shall hold a hearing to determine the identity of the accused and the accuracy of the abstract of such person's record of convictions.

"If the court finds that such accused person is not the same person as the accused named in such records, or that the convictions are not such as to constitute the accused 'an habitual violator' under this act, the prosecution shall be dismissed; but if the court finds that the accused is the same person named in the records certified by the division, the court shall find such person guilty of being 'an habitual violator' of the motor vehicle laws of Kansas and shall direct such person by appropriate order not to operate a motor vehicle on the public highways in this state. The clerk of the court shall file with the division a copy of such order which shall become a part of the permanent records of the division." K.S.A. 8-286.

"It shall be unlawful for any person to operate any motor vehicle in this state while any court order declaring such person to be an habitual violator and prohibiting such operation remains in effect. Any person found to be an habitual violator under the provisions of this act who is thereafter convicted of operating a motor vehicle in this state, while the order of the court prohibiting such operating is in effect, shall be guilty of a class E felony." K.S.A. 8-287.

"(a) No license to operate a motor vehicle in Kansas shall be issued to a convicted habitual violator:

(1) For a period of three years from the date of the order of the court finding the person to be a habitual violator; and

(2) until the privilege of the person to operate a motor vehicle has been restored.

"(b) At the expiration of three years from the date of any final order of a court finding a person to be a habitual violator and directing the person not to operate

a motor vehicle in this state, the person may petition the court in which the person was convicted to have the privilege to operate a motor vehicle in this state restored. Upon such petition and for good cause shown, the court, in its discretion, may restore the privilege and may place restrictions on the privilege as provided by K.S.A. 8-292, subject to other provisions of law relating to the issuance of drivers' licenses." K.S.A. 8-288.

Thus, under the statutory scheme in effect in 1991, the habitual violator could, after the expiration of 3 years, petition the court to have his or her driving privileges restored. Upon hearing thereof, the district court could, in the exercise of its discretion and for good cause shown, restore the petitioner's driving privileges with or without restrictions. In *State v. Browning*, 17 Kan. App. 2d 768, 770, 844 P.2d 739, *rev. denied* 252 Kan. 1093 (1993), the Court of Appeals analyzed this statutory scheme and held:

"Under 8-288, a judicial determination that a person is a habitual violator remains in effect until a court, in its discretion and upon the filing of a petition and a showing of good cause, restores that person's driving privileges. For purposes of 8-287, the phrase 'while any court order declaring such person to be an habitual violator and prohibiting such operation remains in effect,' means until a court grants that person's petition under 8-288(b)."

This prior statutory scheme was clear, concise, and complete as to its operation.

On December 28, 1994, Sedgwick County law enforcement officers stopped defendant for a traffic violation. On May 31, 1995, defendant was charged with operating a motor vehicle while his driving privileges had been revoked as a habitual violator (K.S.A. 1995 Supp. 8-287). Three years had expired since defendant had been declared a habitual violator, but he had not petitioned the court for restoration of his driving privileges. Under the statutory scheme previously outlined, conviction of the pending charge would not have been a tribute to the skill and experience of the prosecutor.

The narrow issue herein arises from the 1994 amendments to K.S.A. 8-286, -287, and -288. These statutes now provide as follows:

"Whenever the files and records of the division shall disclose that the record of convictions of any person is such that the person is an habitual violator, as prescribed by K.S.A. 8-285 and amendments thereto, the division promptly shall

revoke the person's driving privileges for a period of three years." K.S.A. 1995 Supp. 8-286.

"Operation of a motor vehicle in this state while one's driving privileges are revoked pursuant to K.S.A. 8-286 and amendments thereto is a severity level 9, nonperson felony." K.S.A. 1995 Supp. 8-287.

"No license to operate a motor vehicle in Kansas shall be issued to a person for a period of three years from the date of the division's order revoking such person's driving privileges pursuant to K.S.A. 8-286 and amendments thereto and until the person's driving privileges have been restored." K.S.A. 1995 Supp. 8-288.

This streamlined statutory scheme eliminates the prior judicial role in determining habitual violator status and in revoking or restoring driving privileges. No hearing is now statutorily provided for in either the revocation of driving privileges or their restoration. In fact, there is no hearing or proceeding to determine if an individual is a habitual violator. Defendant contends these amendments preclude prosecution under K.S.A. 1995 Supp. 8-287 after the 3-year period has expired. The State argues that because K.S.A. 1995 Supp. 8-288 provides that no license shall be issued from the date of the division's order *and until the person's driving privileges have been restored,* there is no automatic end of the habitual violator status and restoration of driving privileges at the expiration of 3 years. The State does not suggest what the new procedure is for obtaining the restoration of driving privileges. The omission in the present statutory scheme setting forth how driving privileges may be restored is the ground upon which the district court based its dismissal of the complaint. It held, in effect, that under the amended statutory scheme the motor vehicle operation made criminal in K.S.A. 1995 Supp. 8-287 must occur within the 3-year period following revocation. The propriety of this determination is the sole issue before us.

The State argues that the legislative history of the amendments does not show any intent "to lessen the burden placed upon habitual violators seeking restoration of their driving privileges." Little legislative history exists to show intent.

The amendments at issue were part of H.B. 2579 (L. 1994, ch. 353, §§ 5, 6, 7, and 16), which concerned many aspects of the statutes concerning suspension and restriction of driving privileges

and certain alcohol and drug-related offenses. A significant portion of the bill dealt with the use of ignition interlock equipment on a vehicle to preclude its operation while the driver was under the influence of alcohol. This explanation is necessary to explain the only reference to the habitual violator amendments set forth in the Minutes of the House Committee on Judiciary, January 13, 1994:

"Representative Mays questioned page 4, line 39, that reads that there is a reduction in the period of suspension from one year to 90 days. The suspension is being replaced with an interlock. The Chairman stated that this is the action that is taken by the Department of Revenue for test failure and the period of suspension is reduced but the period that the person is on the interlock takes over the period of suspension, the theory being that suspension is not working. They continue to drive, but by placing an interlock on their vehicle they are at least not driving drunk.

"There were questions raised regarding the conflict with the habitual violator's act. Jill Wolters explained that there could be a problem. The conflict is on a third occurrence one could start the three years of revocation earlier than under the Habitual Violators Act. However, the problem would be taken care of in HB 2133, or the Committee could amend the statute to state that under no circumstance can someone's license be revoked for more than three years. The Chairman responded that the interim committee this summer reported HB 2133 adversely.

"*Representative Rock made a motion to make clear the public policy that the period of license revocation would be no greater than three years. Representative Goodwin seconded the motion. The motion carried.*"

More illuminating is certain testimony as to the purpose of the habitual violator amendments. This testimony was given relative to S.B. 774, which was subsequently merged into H.B. 2579. See Minutes of the Senate Committee on Judiciary, March 8, 1994, Attachments. The relevant testimony is reproduced as follows:

. "My name is John Smith, and I am the Administrator of the Driver License and Driver Control Bureaus of the Kansas Division of Vehicles. I appear before on behalf of Betty McBride, Director of the Division of Vehicles, and the Kansas Department of Revenue regarding Senate Bill 774.

"As introduced, this bill amends several statutes relating to driver's license suspensions. This bill removes the court from implementing driver sanctions for a habitual violator, and requires the Division of Vehicles to revoke the person's driving privileges for three years.

"The present statute limits the issues before the court only to determining that the accused person is the person that received the citations, and that the person

was convicted. This can be accomplished administratively and does not violate due process as the person has already been convicted.

"This bill will reduce the administrative burden on the Driver Control Bureau, and provide for a more expedient and sure revocation process for habitual violators. It will also relieve some workload on the court system. In CY 1993, the Bureau certified to the courts 1,717 drivers as habitual violators, but only 662 were adjudicated by the courts to be habitual violators. Many times the courts cannot locate the drivers, prosecutors do not file charges, or defense attorneys petition the court to have a conviction set aside, removing the person from qualifying as a habitual violator.

"The division supports the passage of this bill." Minutes of the Senate Judiciary Committee on Judiciary, March 8, 1994, Attachment 10-1.

"I am Gene Johnson and I represent the Kansas Community Alcohol Safety Action Project Coordinators Association, the Kansas Alcoholism and Drug Addiction Counselors Association and the Kansas Association of Alcohol and Drug Program Directors. We support Senate Bill 774 in the interests of highway safety for those individuals who have violated their driving privileges in the State of Kansas at least three times and satisfactory proof of these violations have been submitted to the Department of Motor Vehicles.

"At the present time the Department of Revenue, Division of Motor Vehicles, after they have been provided proof by the convicting court of three or more serious violations on the Habitual Violator statute, send a certified copy of these convictions to the County Attorney or District Attorney of the offender's last known residence. Upon receipt of this certified copy, the County Attorney or the District Attorney then files a civil action in the District Court, against the offender. The Court then rules on the certified copies, that the offender is an Habitual Violator.

"It does not seem this procedure is necessary. The Division of Motor Vehicles can take administrative action, as they do on all other drivers license suspensions. This particular legislation lessens the load of the County Attorneys and the District Attorneys and the court systems of a good number of cases every month that must have court time set aside to handle these offenses. Another problem with this current procedure is often these offenders are hard to locate and do not have current addresses filed with the Motor Vehicle Department. Therefore, after sending out letters to these offenders, plus notices to appear in Court, only one out of four will appear in order to be adjudicated an Habitual Violator.

"There must be a better way to enforce this law and we feel this proposed legislation which gives the authority to the Motor Vehicle Department, is a proper and simple solution to the problem." Minutes of the Senate Judiciary Committee, March 8, 1994, Attachment 8-1

The following letter from the Honorable William Randolph Carpenter, Administrative Judge for the Third Judicial District, was also included in the Senate Judiciary Committee minutes:

"A prior commitment prohibits my attendance at the March 8th hearing on SB 774. Therefore, I would like to take the opportunity by letter to voice my support of this Bill.

"The Court has been verifying convictions already substantiated by the Division of Motor Vehicles, thereby performing a duplicitous act. This bill will enable habitual violator hearings to be held in their proper place, that being with the Division of Motor Vehicles." Minutes of the Senate Judiciary Committee, March 8, 1994, Attachment 9-1.

Those testifying on behalf of the bill clearly anticipated that the amendments would, in essence, eliminate the courts' role in the process and convert the matter into a purely administrative process. There is nothing to indicate it was contemplated that these amendments would significantly change the burden imposed or the purpose and effect of the habitual violator statutory scheme.

Before proceeding further, it is important to delineate what is and is not involved in the issue before us. The district court found the amended statutory scheme was vague for not specifying how driving privileges were to be restored. This choice of terms is, perhaps, unfortunate, as "vagueness" is a common challenge to the constitutionality of statutes. No question of constitutionality is involved herein, and there is no claim that any of the involved statutes are invalid on any grounds.

When a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. *State v. Alires*, 21 Kan. App. 2d 139, Syl. ¶ 2, 895 P.2d 1267 (1995). Under the fundamental rule of statutory construction, the intent of the legislature governs when that intent can be ascertained from the statute. When a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature, rather than determine what the law should or should not be. The general rule is that a criminal statute must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Roderick*, 259 Kan.

107, 110, 911 P.2d 159 (1996). If in amending a statute the legislature may have unintentionally thrown the baby out with the bathwater, courts, in the name of statutory construction, cannot retrieve the baby and judicially place it back in the statute.

Under the former law, a petition had to be filed seeking a hearing to show cause why defendant "should not be convicted of being an habitual violator." K.S.A. 8-286. If the accused were found to be a habitual violator, then he or she was to be judicially ordered not to operate a motor vehicle on the highways of the state. K.S.A. 8-286. It was a crime to operate a motor vehicle while such order was in effect. K.S.A. 8-287. After 3 years, a habitual violator could petition the court entering the order to restore driving privileges, which the court, in its discretion, for good cause shown, could do, subject to additional restrictions it believed were appropriate. K.S.A. 8-288.

Under the amended scheme of the Division of Vehicles, when the files and records disclose convictions sufficient to establish the individual is a habitual violator as defined by K.S.A. 1995 Supp. 8-285, "the division promptly shall revoke the person's driving privileges for a period of three years." K.S.A. 1995 Supp. 8-286. There is no longer any hearing to determine habitual violator status or revocation of driving privileges. K.S.A. 1995 Supp. 8-287 changes the crime from operating a motor vehicle while under court order declaring the person to be a habitual violator and while the order prohibiting driving is in effect, to operation of a motor vehicle while one's driving privileges are revoked under K.S.A. 1995 Supp. 8-286. Finally, K.S.A. 1995 Supp. 8-288 amends out any procedure for obtaining the return of driving privileges and states no license shall be issued for a period of 3 years from the division's order of revocation and "until the person's driving privileges have been restored." There is no longer any procedure for obtaining restoration of driving privileges.

After careful scrutiny of and comparison of K.S.A. 1995 Supp. 8-286, -287, and -288 with the previous versions thereof, we conclude that the crime of operating a motor vehicle while one's driving privileges have been revoked pursuant to K.S.A. 1995 Supp. 8-286 must occur within the 3-year period following the revocation.

As the uncontroverted time of the charged unlawful motor vehicle operation herein occurred after the expiration of the 3-year period, the district court did not err in dismissing the complaint.

Before concluding, two additional comments need to be made. If this statutory construction is inconsistent with what the legislature intended in amending the statutes, the legislature may desire to further amend the statutes relative to habitual violators. Also, we note that this case involves only the propriety of the dismissal of the complaint alleging violation of K.S.A. 1995 Supp. 8-287 pertaining to habitual violators. No alternative charge of operating a vehicle with a suspended, revoked, or canceled license contrary to K.S.A. 8-262 was made herein.

The judgment is affirmed.