No. 77,733

STATE OF KANSAS, *Appellant,* v. BOBBIE L. HEIRONIMUS, *Appellee.*

(941 P.2d 1356)

Opinion filed July 11, 1997.

*Alan D. Hughes,* assistant county attorney, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellant.

*Michael J. Helvey,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellee.

*James G. Keller,* of Kansas Department of Revenue, was on the brief for *amicus curiae* Kansas Department of Revenue.

The opinion of the court was delivered by

SIX, J.: Defendant Bobbie L. Heironimus, declared a habitual violator (K.S.A. 1996 Supp. 8-286), was charged with operating a motor vehicle while his driving privileges were revoked (K.S.A. 1996 Supp. 8-287, a severity level 9, nonperson felony).

Our jurisdiction is under K.S.A. 22-3602(b)(1) (State's appeal from a dismissal of the complaint). The issue is whether the ha-

bitual violator statutes (HVS), K.S.A. 8-284 *et seq.*, are unconstitutional because they fail to provide due process.

We find the HVS constitutional and reverse the district court. Heironimus received the process he was due.

## FACTS

Heironimus was stopped for speeding on May 25, 1996. He had in his possession a Kansas driver's license issued February 14, 1996, with an expiration date of February 6, 2000. On April 3, 1996, he was declared a habitual violator under K.S.A. 8-285 by the Division of Vehicles of the Department of Revenue (Division). The order giving notice of revocation of driving privileges mailed by the Division to Heironimus on April 3, 1996, listed three prior violations for failure to maintain liability automobile insurance, contrary to K.S.A. 1995 Supp. 40-3104, and the conviction dates. The order began: "Our records indicate that you have been convicted of at least three serious moving violations as set out in K.S.A. 8-285." The order said that Heironimus' driving privileges were revoked until April 3, 1999, and directed him to surrender his current license, stating that his failure to do so would be a misdemeanor. The order did not mention that continuing to drive after being declared a habitual violator was a felony offense. The order said: "Please do not request any restricted driving privileges. Modifications to the above revocation are prohibited by statute." The order did not mention any right to request administrative review. Heironimus continued to drive, ignoring the order. He did not surrender his license.

On June 26, 1996, the State filed a felony complaint against Heironimus, alleging a violation of K.S.A. 1996 Supp. 8-287. At the preliminary hearing, Heironimus challenged the constitutionality of the HVS, claiming a due process violation because the HVS do not provide for a prerevocation administrative hearing. The district court found sufficient evidence to bind him over, but declared the HVS unconstitutional for lack of due process and dismissed the complaint without prejudice.

## DISCUSSION
### The HVS

Key HVS are K.S.A. 8-285 and K.S.A. 1996 Supp. 8-286. K.S.A. 8-285 provides in part:

"The term 'habitual violator' means any resident or nonresident person who, within the immediately preceding five years, has been convicted in this or any other state:

"(a) Three or more times of:

. . . .

(8) violating the provisions of K.S.A. 40-3104 and amendments thereto, relating to motor vehicle liability insurance coverage or an ordinance of any city in this state, which is in substantial conformity with such statute."

K.S.A. 1996 Supp. 8-286 provides:

"Whenever the files and records of the division shall disclose that the record of convictions of any person is such that the person is an habitual violator, as prescribed by K.S.A. 8-285 and amendments thereto, the division promptly shall revoke the person's driving privileges for a period of three years."

Before amendment in 1994, K.S.A. 8-286 required the Division to forward a certified abstract of a person's record of convictions reflecting habitual violator status to the district or county attorney, who would then prosecute in the district court. At the hearing, the district court would determine identity and the accuracy of the abstract of the record of convictions. If the information was accurate, the defendant was found to be guilty as a "habitual violator" and directed not to operate a motor vehicle on the public highways. Under K.S.A. 8-287 and K.S.A. 8-288, a habitual violator was guilty of a class E felony and was not to be issued a driver's license for 3 years from the date of the district court order. See *State v. Proffitt*, 261 Kan. 526, 529-32, 930 P.2d 1059 (1997), for a discussion of the HVS, the 1994 amendment, L. 1994, ch. 353, § 5, and the amendment's legislative history.

The 1994 amendment eliminated the district court proceeding. Instead, the Division automatically revokes a driver's license when its records reveal habitual violator status.

The State and *amicus curiae* contend that the 1994 amendment broadened the scope of the post-suspension/revocation adminis-

trative review procedures provided under K.S.A. 8-255(c) to include habitual violator revocations. We agree.

K.S.A. 1996 Supp. 8-255(c) provides:

"When the action by the division suspending, revoking or disqualifying a person's driving privileges is based upon a report of a conviction or convictions from a convicting court, the person may not request a hearing but, within 30 days after notice of suspension, revocation or disqualification is mailed, *may submit a written request for administrative review and provide evidence to the division to show the person whose driving privileges have been suspended, revoked or disqualified by the division was not convicted of the offense upon which the suspension, revocation or disqualification is based.* Within 30 days of its receipt of the request for administrative review, the division shall notify the person whether the suspension, revocation or disqualification has been affirmed or set aside. The request for administrative review shall not stay any action taken by the division." (Emphasis added.)

Heironimus responds that the State did not raise the K.S.A. 1996 Supp. 8-255(c) statutory argument in the district court, and, therefore, the general rule against new theories on appeal blocks our review. The record does not support this contention. The district court considered and rejected the State's argument.

### District Court Decision

The district court interpreted the administrative review procedures in K.S.A. 1996 Supp. 8-255(c) as not applicable to habitual violator revocations because the 8-255(c) procedures were part of the Motor Vehicle Drivers' License Act, K.S.A. 8-234 through K.S.A. 8-271, which is separate from the HVS. The district court viewed K.S.A. 1996 Supp. 8-255(c) administrative review as applicable only to suspensions or revocations under K.S.A. 1996 Supp. 8-255(a). According to the district court, Heironimus' revocation under K.S.A. 8-285(a)(8) did not fit into any of the categories described in K.S.A. 1996 Supp. 8-255(a). Also, the HVS contained no administrative review provisions.

In the district court's view, even if 8-255(c) administrative review was applicable to Heironimus' revocation, the order of revocation was deficient, from a due process standpoint, in several respects: (1) The order stated that the Division's records showed Heironimus had been convicted of "at least three serious moving violations

as set out in K.S.A. 8-285," when his revocation was based on violations of K.S.A. 1995 Supp. 40-3104, which were not "moving violations" as defined at K.A.R. 92-52-9; (2) the order did not inform him that continuing to drive after the revocation was a felony; and (3) the order did not alert him to any review rights and, in fact, discouraged him from pursuing any review with the statement "Modifications to the above revocation are prohibited by statute." K.A.R. 92-52-9(c) does not list 40-3104 as a moving violation. K.S.A. 40-3104 was so defined before the Secretary of Revenue amended 92-52-9(c) in 1992. Apparently, the Division had not updated its order of revocation form. We address the language of the revocation order later in our opinion.

## 1994 Amendment Legislative History and Intent

The rules of statutory construction have been oft-repeated in our opinions. A typical recitation emphasizing our search for legislative intent is found in *State v. Gonzales*, 255 Kan. 243, 248-49, 874 P.2d 612 (1994).

We embark on that search. The first sentence in K.S.A. 1996 Supp. 8-255(c) refers to "action" by the Division in suspending or revoking driving privileges based on a "report of conviction or convictions." Is this language broad enough to include habitual violator revocations under K.S.A. 1996 Supp. 8-286? We believe it is.

The 1994 amendments to 8-255(c) and 8-286 were both contained in the same bill, H.B. 2579. L. 1994, ch. 353, §§ 1, 5. The legislature has a history of including amendments germane to the broad area of alcohol/drugs, public welfare, driving, and habitual violators in the same act. See *State v. Reves*, 233 Kan. 972, 666 P.2d 1190 (1983) (holding that 1982 S.B. 699 did not contain more than one subject and did not violate art. 2, § 16 of the Kansas Constitution; K.S.A. 8-255 [Weeks] and K.S.A. 8-285 [Weeks], among other statutes, were amended in that act; see L. 1982, ch. 144, §§ 1-2).

Before the 1994 amendment, the administrative review language in K.S.A. 8-255(c) had been restricted to administrative action based upon convictions for certain specified offenses listed in the statute. The 1994 amendment to K.S.A. 8-255(c) eliminated the

references to specific statutes in favor of the following language: "When the action by the division suspending, revoking or disqualifying a person's driving privileges is based upon a report of *a conviction or convictions* from a convicting court . . . ." (emphasis added). L. 1994, ch. 353, § 1(c). The language "conviction or convictions" was substituted for "conviction." The 1994 change shows legislative intent to broaden the applicability of administrative remedies to include habitual violator revocations, which are based on three or more convictions.

The pre-1994 version of K.S.A. 8-286 required the court to "direct such person by appropriate order not to operate a motor vehicle on the public highways in this state." The district court took action concerning the habitual violator's driving privileges, not the Division, and the word "revoke" was not used in K.S.A. 8-286. Insertion of the word "revoke" in K.S.A. 1996 Supp. 8-286 thus links into the K.S.A. 1996 Supp. 8-255(c) language "action by the division . . . revoking . . . a person's driving privileges."

Although no due process issues were raised in *Proffitt*, we described the 1994 amendment to the HVS, in that opinion saying:

"This streamlined statutory scheme eliminates the prior judicial role in determining habitual violator status and in revoking or restoring driving privileges. No hearing is now statutorily provided for in either the revocation of driving privileges or their restoration. In fact, there is no hearing or proceeding to determine if an individual is a habitual violator." 261 Kan. at 529.

We call on the familiar maxims of statutory construction expressed in *Taylor v. Peredition Minerals Group, Ltd.*, 244 Kan. 126, 133, 766 P.2d 805 (1988), ("[I]t is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.") and *McCarthy v. City of Leawood*, 257 Kan. 566, 578, 894 P.2d 836 (1995) ("[W]e must consider the whole Act and not read one statute in isolation from the other."). K.S.A. 1996 Supp. 8-286 should not be read in isolation from K.S.A. 1996 Supp. 8-255(c).

Heironimus argues that to construe K.S.A. 1996 Supp. 8-255(c) as applying to habitual violators will produce an absurd result. He observes that 8-255(c) only authorizes habitual violators to request a post-revocation administrative review without a hearing, but per-

sons subject to revocation under K.S.A. 1996 Supp. 8-255(a)(1), (2), (3), or (5) are entitled to an administrative hearing (K.S.A. 1996 Supp. 8-255[d]). Also, he reasons the suspension or revocation under 8-255(d) may, in certain situations, not take effect until after the hearing. We disagree with his "absurd result" characterization.

We hold that the administrative review procedures in K.S.A. 1996 Supp. 8-255(c) apply to K.S.A. 1996 Supp. 8-286 revocations. The K.S.A. 1996 Supp. 8-255(c) administrative review procedure applies to a person whose license has been suspended or revoked "based upon a report of a conviction or convictions from a convicting court." This includes not only habitual violators but also persons receiving suspensions or revocations based on ministerial determinations from convictions shown on the driving records, under any of the applicable categories listed in K.S.A. 1996 Supp. 8-255(a) (as in 8-255[a][1], [2], or [4]), or under any other applicable statutes.

## Due Process Cases

Resolving the constitutional status of a statute is a question of law; thus, we exercise an unlimited, de novo standard of review. *State v. Myers*, 260 Kan. 669, 676, 923 P.2d 1024 (1996). The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity. Before a statute may be stricken we must determine, beyond substantial doubt, that the statute violates the constitution. In deciding constitutionality, it is our duty to uphold the statute under attack rather than defeat it. If there is any reasonable way to construe the HVS as constitutionally valid, we should do so. 260 Kan. at 676.

The prologue to our analysis acknowledges that Heironimus does not question the validity of the three K.S.A. 1995 Supp. 40-3104 convictions that sponsor his status of habitual violator. The Division's paperwork is accurate. Also, the mailing and address on the order are not questioned.

A characteristic of the HVS is that no criminal sanction attaches to being declared a habitual violator until the offender voluntarily decides to operate a motor vehicle while flouting the order of license revocation.

Revocation of a driver's license involves State action that adjudicates important interests of the licensees. In such cases licenses are not to be revoked without the procedural due process required by the Fourteenth Amendment. *Bell v. Burson*, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971). We have characterized the loss of driving privileges for 3 years as a "major sanction." *State v. Wood*, 231 Kan. 699, 702, 647 P.2d 1327 (1982). We consider possession of a driver's license a regulated privilege protected by due process but not an inherent fundamental right.

The purpose of a hearing mandated by *Bell v. Burson* is to permit a licensed driver to demonstrate that he or she is free from fault and thus the license should not be revoked. *State v. Jennings*, 150 Ariz. 90, 93, 722 P.2d 258 (1986). Revocation under the HVS occurs only after the three convictions for the enumerated offenses are final. Heironimus had already had the opportunity of a full trial in connection with each of the three offenses before the mandatory provisions of the HVS applied.

In *Bell v. Burson*, the Court determined a Georgia motor vehicle safety responsibility statute covering uninsured motorists was unconstitutional for violating the petitioner's due process rights by failing to give him a presuspension hearing on liability. 402 U.S. at 543. The petitioner, an uninsured motorist, faced suspension after being involved in an accident and failing to post the required security for injuries to the other party. *Burson* reasoned that because a release from liability from the injured party or an adjudication of nonliability could prevent the suspension from taking effect or lift an already imposed suspension, liability was an important factor in the statutory scheme. It was not a no-fault scheme. Thus, the State could not, consistent with due process, "eliminate consideration of [the liability] factor in its prior hearing." 402 U.S. at 541.

In deciding that the HVS violated due process, the district court applied the three-part test of *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976):

"[D]ue process [analysis] generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

The *Eldridge* test has been applied in determining the constitutionality of driver's license revocation statutes in two United States Supreme Court cases: *Mackey v. Montrym*, 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979), and *Dixon v. Love*, 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723 (1977).

*Montrym* held that a Massachusetts statute mandating suspension of a driver's license for refusal to take a breath test upon arrest for driving while intoxicated, without a presuspension hearing, did not violate due process. The Massachusetts statute provided for an immediate postsuspension hearing and provided for an appeal. Montrym's license was suspended when he initially refused to take a breath test after his arrest. Applying the third part of the *Eldridge* test (the government's interest), *Montrym* concluded "that the compelling interest in highway safety justifies the Commonwealth in making a summary suspension effective pending the outcome of the prompt postsuspension hearing available." 443 U.S. at 19.

*Dixon v. Love*, a habitual violator case, is of interest here because of its factual similarity. *Love* reviewed the constitutionality of an Illinois statute authorizing the Secretary of State to suspend or revoke a driver's license, without a prerevocation hearing, if official records or other sufficient evidence showed that the driver had been repeatedly convicted of traffic offenses. *Love* found that "the risk of an erroneous deprivation in the absence of a prior hearing is not great," because under the Secretary's regulations, suspension and revocation decisions were largely automatic. 431 U.S. at 113. The Court said:

"Of course, there is the possibility of clerical error, but written objection will bring a matter of that kind to the Secretary's attention. In this case appellee had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based. Appellee has not challenged the validity of those convictions or the adequacy of his procedural rights at the time they were determined. . . . Since appellee does not dispute the factual basis for the Secretary's decision, he is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations. Such an appearance might make the licensee feel that he has received

more personal attention, but it would not serve to protect any substantive rights. We conclude that requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations." 431 U.S. at 113.

Justice Stevens, in his concurring opinion, emphasized that Love's license was subject to mandatory revocation. 431 U.S. at 117. Justice Brennan, also concurring in the result, said: "[A]s my Brother Stevens demonstrates, a hearing was unnecessary to establish what was already clear—that the revocation of appellee's license was mandatory." 431 U.S. at 118.

A hearing for Heironimus was unnecessary to establish what was already clear, that revocation of his license was mandatory. This is not a *Bell v. Burson* case. Bell's license was revoked before he had any opportunity for a hearing. Here, Heironimus had the opportunity for a hearing with each underlying conviction.

### Due Process Analysis Under *Eldridge*

Revocation of driving privileges for 3 years is the private interest affected here. Heironimus argues that the imposition of felony driver status on habitual violators should increase the weight assigned to the private interest involved. We disagree. Heironimus' due process attack targets the administrative driver's license revocation procedures, not the felony charge.

### Risk of Erroneous Deprivation

The legislative history of the 1994 HVS amendments shows concern that the pre-1994 district court proceeding was an administrative burden on the Division, prosecutors, and the courts, and resulted in many habitual violators remaining behind the wheel.

Heironimus argues that he should be entitled to a prerevocation "full blown evidentiary hearing," equivalent to the former district court proceeding, in order to prevent an erroneous deprivation. The risk of an erroneous deprivation is slight, however, in view of the limited factual issues in the habitual violator determination. The only issues involved are whether the Division's records reflect the requisite convictions, and the identity of the violator. A prerevocation hearing is not needed. See *State v. Boos*, 232 Kan. 864, 659 P.2d 224, *cert. denied* 462 U.S. 1136 (1983) (In construing the

pre-1994 amendment version of K.S.A. 8-286, we noted that the statutory civil proceeding for habitual violator status involved only the issues of whether the Division's records reflected the convictions specified in K.S.A. 8-285 and the identity of the defendant.). Conviction existence, dates, and identity are readily verifiable recordkeeping matters appropriately administratively reviewed through written correspondence.

The postrevocation review procedure provided at K.S.A. 1996 Supp. 8-255(c) is sufficient for due process purposes. Revocation is automatic, once the requisite convictions appear on a record. The HVS do not provide for leniency or exceptions requiring a hearing. The habitual violator had due process for each of the underlying convictions. See *Love*, 431 U.S. at 113 ("[A]ppellee had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based."). Due process was satisfied when Heironimus was notified of revocation because the only issue he could raise would be clerical error. Where there is the possibility of clerical error, written objection will alert the Division, the agency processing the revocation. See *Montrym*, 443 U.S. at 16; *Love*, 431 U.S. at 113.

Heironimus also was entitled to a K.S.A. 40-3118(e) hearing in connection with each driver's license suspension for violating K.S.A. 1995 Supp. 40-3104. K.S.A. 40-3118(e) provides in part: "Upon receipt of a timely request for a hearing, the director shall afford such person an opportunity for hearing within the time and in the manner provided in K.S.A. 8-255 and amendments thereto."

Heironimus points out that the district court found the likelihood of erroneous deprivation high, based on the other cases in district court involving erroneous action taken by the Division against various drivers. Without more specific information about these cases, it is not clear whether erroneous deprivations have taken place. Heironimus makes no showing that the risk of an erroneous deprivation is great.

Governmental Interest

K.S.A. 8-284 provides:

"It is hereby declared to be the public policy of the state of Kansas:

"(a) To provide maximum safety for all persons who travel or otherwise use the public highways of the state;

"(b) *To deny the privilege of operating motor vehicles on such highways to persons who by their conduct, attitude and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of this state, the orders of its courts and the statutorily required acts of its administrative agencies*; and

"(c) To discourage repetition of criminal acts by individuals against the peace and dignity of this state and its political subdivisions *and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual violators who have been convicted repeatedly of violations of traffic laws*." (Emphasis added.)

The government's interest in keeping habitual violators off Kansas roads is a substantial and important one—both from public safety and public welfare perspectives. We believe that Heironimus' case raises both safety and public welfare concerns. While driving without liability insurance may not impact safety as dramatically as driving while intoxicated, it certainly jeopardizes a potential personal injury victim's ability to receive adequate compensation.

In *Manzanares v. Bell*, 214 Kan. 589, 601, 522 P.2d 1291 (1974), we acknowledged the public policy behind the mandatory insurance law:

"The [Kansas No-Fault] Act is a legislative response to a growing public demand for a change in the manner society deals with the enormous legal, social and economic problems resulting from motor vehicle accidents. Every citizen of this state is affected by the carnage occasioned by motor vehicle accidents occurring upon our highways. The state has an interest in protecting those who use the public highways and that interest is not limited to accident prevention."

The State, relying on *Love*, 431 U.S. at 114-15, argues that the substantial public interest in promptly removing habitual violators from the road is "sufficiently visible and weighty" to justify summary revocation and denial of a prerevocation hearing to the licensee. We agree.

### The Order of Revocation

We now examine the Division's April 3, 1996, order of revocation mailed to Heironimus. Is the order so misleading that it tramples

on his due process rights? We think not. The title, "DRIVERS LICENSE WITHDRAWAL NOTICE HABITUAL VIOLATOR (K.S.A. 8-286)" alerted Heironimus to the HVS. Although the statement that the records showed "three serious moving violations" is not correct (see K.A.R. 92-52-9), the listing of Heironimus' three convictions for "failure to maint. compulsory lia" and the dates of conviction are accurate.

Heironimus contends that the failure in the order to inform him of any right to administrative review, coupled with the statement "Modifications to the above revocation are prohibited by statute," violated due process by giving him the impression that no right to administrative review existed. The Division advises that it currently gives notice to habitual violators of their administrative review rights, although it did not do so in the revocation order sent to Heironimus.

The administrative review procedures are published in the statutes. In addition, because the accuracy of the three past convictions listed in the order are not questioned, no error exists to be corrected by administrative review. We agree that the order was bumbled. A preferable order would have omitted the "moving violation" label and also informed Heironimus of his administrative review rights. However, those deficiencies did not deny Heironimus any due process. He has shown no prejudice. Absent such showing, his defective notice claim lacks merit. See *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213-14, 755 P.2d 1337 (1988) (Department's form held to substantially comply with mandatory notice provisions of K.S.A. 1985 Supp. 8-1001(f)(1)(E); Barnhart failed to show any prejudice caused by the form).

Heironimus argues that due process should require the Division to notify the licensee at the time of revocation that driving after habitual violator revocation is a felony. The order correctly informed him that his failure to turn in his license would be a misdemeanor. See K.S.A. 1996 Supp. 8-260(a)(4) and (b). He was not informed that continuing to drive after the revocation would be a felony. As a matter of public policy, it seems wise for the Division to notify habitual violators that continuing to drive after revocation is a felony. The information may have a salutatory effect on reduc-

ing the number of habitual violators who continue to drive. The failure to notify Heironimus that continuing to drive would subject him to a felony charge is not a due process violation.

We agree with the rationale of *People v. McKnight*, 200 Colo. 486, 617 P.2d 1178 (1980) (habitual traffic offense statute held to accord due process to defendant). "The requirements of due process are satisfied by the notice which is given through publication of the statutes." 200 Colo. at 497.

The Supreme Court said in *Montrym*:

"[T]he Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error. The Due Process Clause simply does not mandate that all governmental decision-making comply with standards that assure perfect, error-free determinations. [Citations omitted.]" 443 U.S. at 13.

Heironimus' repeated violations under the mandatory insurance law, K.S.A. 40-3104, show his indifference to the welfare of others and his disrespect for the laws of this State. He was not free to ignore the Division's order of revocation and drive in violation of the law. *State v. Damman*, 244 Kan. 487, 491, 769 P.2d 662 (1989). We uphold the constitutionality of the HVS. The constitutionality of similar statutes has been upheld against due process attacks in *Bryant v. State of Ala. Dept. of Pub. Safety*, 494 So. 2d 425 (Ala. Civ. App. 1986) (mandatory 1-year revocation of driving privileges without hearing, following two DUI convictions within 5-year period); *State v. Jennings*, 150 Ariz. 90 (mandatory revocation of driving privileges, without hearing, following two convictions within 36 months of various driving offenses); *Paterson v. Department of Motor Vehicles*, 171 Cal. App. 3d 1126, 217 Cal. Rptr. 881 (1985) (mandatory 3-year driver's license suspension, without prior hearing, upon third DUI conviction within 5 years); *Division of Driver Licensing v. Bergmann*, 740 S.W.2d 948 (Ky. 1987) (automatic 1-year driver's license revocation following second DUI conviction); *Yeargin v. S. C. Dept. of Highways*, 313 S.C. 387, 438 S.E.2d 234 (1993) (mandatory suspension of driver's license without hearing for certain convictions); *Sniffin v. Cline*, 193 W. Va. 370, 375, 456 S.E.2d 451 (1995) ("Mandatory administrative revocation of an op-

erator's license, without an administrative hearing, under [the statute], where there has been a prior hearing and conviction on the underlying criminal charge, does not deny the person whose license is so revoked due process of law." [quoting *Wells v. Roberts*, 167 W. Va. 580, 585, 280 S.E.2d 266 (1981)]); and *Scott v. Hill*, 407 F. Supp. 301 (E.D. Va. 1976) (automatic 10-year driver's license revocation, without hearing, upon third DUI conviction).

We reverse the district court and remand for trial.