(142 P.3d 735)
No. 94,033

THOMAS J.G. MARTIN, *Appellee*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellant*.

 Opinion filed
September 15, 2006. 

*John D. Shultz*, of Kansas Department of Revenue, for the appellant.

*Michael A. Millett*, of Law Offices of Michael A. Millett, P.A., of Overland Park, for the appellee.

Before MALONE, P.J., GREEN, J., and BUKATY, S.J.

BUKATY, J: Following an administrative hearing, the Kansas Department of Revenue (KDR) suspended the drivers license of Thomas J.G. Martin for his failing of a chemical breath test. He appealed to the district court. The court dismissed the suspension order for the reason that the certifying police officer did not have a reasonable and articulable suspicion to stop Martin in the first place. KDR appeals raising two issues: first, that the reason for the initial stop is irrelevant in an administrative driver's license suspension hearing; and second, if it was relevant, that the court erred in finding the arresting officer did not have the required suspicion to stop Martin. We agree with KDR on its first issue and reverse and remand. We need not then address the second issue.

At trial, both parties stipulated to the fact Martin was operating his vehicle under the influence of alcohol at the time he was stopped. The sole issue before the district court was whether Officer Christopher Wilson had a reasonable and articulable suspicion to stop Martin when he did.

Officer Wilson testified that he saw Martin driving his vehicle with the passenger side brake light inoperable. Two other brake lights, the one on the driver's side and the one in the lower portion of the rear window, were operating properly. Officer Wilson mistakenly believed that the traffic statutes required that all the brake lights be operable. Consequently, he stopped Martin. Officer Wilson later learned that the relevant statutes require that only two lights be operating. Martin was not operating his vehicle in violation of any law with only two of the brake lights in working order. Apparently, Officer Wilson had no reason to believe Martin was under the influence until after he made the stop and observed him.

After hearing testimony, the district court reviewed a police dashboard videotape made during the stop and dismissed the case.

The district court concluded Martin had met his burden of proof in establishing the officer made a mistake of law when he believed all equipment had to be operable. As a result, the court concluded that no reasonable and articulable suspicion existed that Martin had committed a traffic violation and the suspension order should be dismissed.

KDR argues that whether there was a reasonable and articulable suspicion for the stop of a vehicle is not an issue one can raise in a driver's license suspension case. KDR contends the provisions set forth in K.S.A. 8-1020(h)(2) limit the scope of an administrative hearing following an officer's certification that a person failed a breath test. Martin counters that law enforcement cannot determine whether a person is operating a vehicle under the influence of drugs or alcohol until after stopping the vehicle and the legislature intended that the officer must have a reasonable suspicion to justify the stop. He argues the stop violated the guarantees against unreasonable seizures provided under the Fourth Amendment to the United States Constitution and §15 of the Kansas Constitution Bill of Rights.

Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

K.S.A. 8-1020(h)(2) recites as follows:

"If the officer certifies that the person failed a breath test, the scope of the hearing shall be limited to whether:
(A) A law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs, or both, or had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system;
(B) the person was in custody or arrested for an alcohol or drug related offense or was involved in a vehicle accident or collision resulting in property damage, personal injury or death;
(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto;
(D) the testing equipment used was certified by the Kansas department of health and environment;

(E) the person who operated the testing equipment was certified by the Kansas department of health and environment;

(F) the testing procedures used substantially complied with the procedures set out by the Kansas department of health and environment;

(G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's breath; and

(H) the person was operating or attempting to operate a vehicle."

We first note that Kansas case law in this area reveals that the basic nature of an administrative driver's license suspension hearing and a criminal proceeding are different in certain ways significant to the issues here.

In *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 457, 980 P.2d 1022 (1999), an administrative hearing officer ordered Huelsman's driver's license suspended after determining that the police had reasonable grounds to believe he was operating his vehicle under the influence of alcohol (DUI) and had properly requested Huelsman to submit to a breath test. A week later, the municipal court suppressed the evidence in Huelsman's criminal proceeding when it found he had been arrested without probable cause. On appeal from the administrative suspension, Huelsman claimed that the suppression of evidence in his criminal prosecution for DUI had a collateral estoppel effect in the suspension proceeding. While not germane to the present case, the district court determined that the city and KDR were in privity for the purposes of collateral estoppel. However, our Supreme Court reversed the district court, in part, because the disparity between the quality and extensiveness of the criminal and administrative procedures justified an exception to the collateral estoppel rule. 267 Kan. at 459. The *Huelsman* court's reasoning is appropriate here, too, and best explains the disparity between criminal and administrative proceedings:

"The purpose of the DUI action is punishment. The license suspension action, however, is remedial, with the purpose of protecting the public by removing dangerous drivers from the roads. . . .

' . . . The suspension sanction quickly removes dangerous drivers from the street to prevent them from injuring anyone. Any harmful effect which the sanction may have on the driver simply indicates that the sanction may appear to be punitive from the driver's perspective. Such harmful effects do not necessarily

indicate that the sanction carries purposes of punishment such as deterrence and retribution. While certainly the sanction *may* be interpreted as having punitive effects, this does not mean the sanction *must* be interpreted as having punitive effects. [Citation omitted.]' " 267 Kan. at 462 (quoting *State v. Mertz*, 258 Kan. 745, 760, 907 P.2d 847 [1995]).

Prior to *Huelsman*, this court recognized that a driver's license suspension hearing does not implicate the same private interests implicated in criminal charges under DUI laws. *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 188, 959 P.2d 940, *rev. denied* 265 Kan. 885 (1998). Meehan appealed the suspension of his driver's license by KDR after he failed a breath test. The district court granted partial summary judgment in favor of KDR on evidentiary questions and later entered an order upholding the suspension. On appeal, and relevant to the case at hand, this court examined our statutory scheme to determine whether the statutes and regulations establishing the reliability of breath testing in administrative suspension hearings are contrary to due process. The *Meehan* court looked to the decision in *State v. Heironimus*, 262 Kan. 796, 805, 941 P.2d 1356 (1997), and noted the court in that administrative suspension context declined to " 'increase the weight assigned to the private interest involved,' because of the criminal repercussions if the licensee continued to drive." *Meehan*, 25 Kan. App. 2d at 188 (quoting *Heironimus*, 262 Kan. at 805). Instead, the weighing of governmental and private interests in a driver's license suspension turns on the administrative nature of the proceedings. 25 Kan. App. 2d at 188 (citing *Heironimus*, 262 Kan. at 805). In other words, the private interests involved in an administrative hearing are not weighed equally with the private interests involved in a criminal proceeding.

Against this backdrop of case law, we next examine the wording in K.S.A. 8-1020(h)(2). In doing so, we must keep in mind the basic tenant of statutory construction.

" 'The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed

rather than determine what the law should or should not be.' [Citation omitted.]" *Pieren-Abbott v. Kansas Dept. of Revenue,* 279 Kan. 83, 88, 106 P.3d 492 (2005).

We conclude that the language of K.S.A. 8-1020(h)(2) is clear and unambiguous. The plain language of the section clearly indicates the legislature intended to limit the scope of an administrative driver's license suspension hearing to the issues delineated in the statute. Nowhere in the section does it mention that a driver may raise in a suspension hearing the issue of lack of a reasonable and articulable suspicion for the original stop. Under subsection (h)(2)(A) of the statute, a driver may challenge a suspension on the basis the law enforcement officer had no reasonable grounds to believe the driver was under the influence of alcohol but nowhere does the plain language indicate that the officer must have that belief prior to the stop. Martin invites us to construe that section as implying that a driver may challenge whether there was reasonable and articulable suspicion for the initial stop. We decline the invitation. Had the legislature intended to allow the expansive inquiry as Martin requests, it easily could have done so in its language.

Any statute the legislature enacts defining the rules in criminal, administrative, and civil cases cannot stand if it infringes on constitutional rights. *Meehan,* 25 Kan. App. 2d at 186. We find no constitutional infirmity in K.S.A. 8-1020(h)(2). Driving in Kansas is not a right but a privilege. 25 Kan. App. 2d at 193. We also note that K.S.A. 8-1001(q) provides that the previous provisions of that statute (which provide for the testing of drivers for alcohol, when and on what grounds an officer may request a test, implied consent of the driving public to testing, *etc.*) are remedial and shall be liberally construed to promote public health, safety, and welfare.

We note that several other jurisdictions subscribe to the proposition that the basis for the original stop has no relevance at driver's license suspension hearings. See *Tornabene v. Bonine ex rel. Highway Dept.,* 203 Ariz. 326, 333, 54 P.3d 355 (Ct. App. 2002) (the validity of an investigatory stop is not an issue to be considered in a driver's license suspension case); *Powell v. Secretary of State,* 614 A.2d 1303, 1305-06 (Me. 1992) (no requirement that a hearing

officer determine whether probable cause existed to justify an initial stop in a driver's license revocation case); *Beavers v. State Dept. of Mtr. Vehicles*, 109 Nev. 435, 438, 851 P.2d 432, *cert. denied* 510 U.S. 946 (1993) (where the court found whether the initial traffic stop was lawful is irrelevant because a license suspension hearing is a civil proceeding, not a criminal prosecution, and the scope of a hearing is limited to those issues of whether the person failed to submit to an evidentiary test or their blood alcohol concentration exceeded the legal limit; thus, whether an investigatory stop is lawful is outside the scope of a license revocation hearing).

The holdings in these cases comport with Kansas law that differentiates between a criminal proceeding and an administrative hearing. The court in each case explicitly considered the governmental interest in promoting the public's health, safety, and welfare. See *Tornabene*, 203 Ariz. at 333; *Beavers*, 109 Nev. at 438; *Powell*, 614 A. 2d at 1307. Similarly, our Supreme Court has recognized the governmental interest in keeping those who drive while intoxicated off the road as a substantial and important interest since intoxicated drivers imperil the public's safety and welfare. *Heironimus*, 262 Kan. at 807.

We conclude that in Kansas the reason a law enforcement officer originally stops a person has no relevance at an administrative hearing to suspend the driver's license of that person for failing a breath test. Obviously, this conclusion then renders moot the second issue raised by KDR as to whether a reasonable and articulable suspicion existed to stop Martin under the facts of this case.

Reversed and remanded with directions to uphold the suspension order of the administrative hearing officer.