102 N.J. Super. 370 (1968)
246 A.2d 59
STATE OF NEW JERSEY, PLAINTIFF,
v.
CARL WENOF, DEFENDANT.
Superior Court of New Jersey, Camden County Court, Law Division  Criminal.
Decided July 17, 1968.
*372 Mr. Victor Librizzi, Jr. Assistant Attorney General for the State of New Jersey (Mr. Arthur J. Sills, Attorney General, attorney).
Mr. Gerald E. Haughey for defendant.
HEINE, J.S.C. (temporarily assigned).
Defendant appeals his conviction of violating R.S. 39:3-40, driving when his license had been suspended or revoked. The statute in pertinent part provides:
"No person * * * whose driver's license * * * has been suspended or revoked * * * shall personally operate a motor vehicle during the period of * * * suspension, revocation, or prohibition. * * *
*373 A person violating any provision of this section shall be fined not less than $200.00 nor more than $1,000.00, or be imprisoned in the county jail for not more than 6 months, or both."
The facts are stipulated. On December 19, 1965 defendant was given a summons for speeding. He failed to appear or answer the summons. On May 20, 1966 the Director of the Division of Motor Vehicles sent him written notice of proposed suspension of his driving privileges for failure to satisfy the summons. The notice was sent by ordinary mail addressed to defendant's address as listed by him in his application for driver's license. The notice indicated that the suspension was to be effective June 10, 1966 unless written evidence was furnished the Division of Motor Vehicles that the court summons had been satisfied. Defendant did not respond to the notice, whereupon the Director on July 22, 1966 sent him by ordinary mail addressed to the same address an order that his driver's license had been suspended. A copy of the order was sent to the local police department. The officer reported that he was unable to comply with the order to collect the driver's license certificate because defendant had moved and left no forwarding address.
On February 15, 1966 defendant was given a summons for speeding. He failed to appear or answer the summons. On September 1, 1966 the Director sent defendant written notice of proposed suspension of his driving privileges for failure to satisfy the summons. This notice was sent by ordinary mail to the same address. The suspension was to be effective September 22, 1966 unless the summons was previously satisfied. Defendant did not respond to this notice, whereupon the Director on October 20, 1966 sent him by ordinary mail addressed to the same address an order that his driver's license had been suspended. A copy of the order was sent to the local police department. On November 1, 1966 the local officer reported that he was unable to comply with the license collection order because the address proved to be a business address and defendant had moved *374 therefrom some six months ago. He had left no forwarding address with the postal authorities.
On June 2, 1967, while the above suspensions were still in force and effect, defendant was apprehended a third time for speeding. He was given a summons. A subsequent routine check by the police revealed that defendant was driving while still on the revoked list. A summons was then issued for the instant violation. His license still showed the same address.
Defendant denies receipt of any of the above notices relating to his suspensions. It is admitted that the notices were mailed but not received. He consequently contends that his driving privilege was suspended without due process and, he is therefore not guilty of the charge.
Preliminarily, it might appear that the reason assigned for reversal of the conviction constitutes a collateral attack upon the determination of the Director of Motor Vehicles that could only be made by direct review by the Appellate Division under the provisions of R.R. 4:88-8. Normally, attempts to question or collaterally attack prior decisions of an administrative agency are rejected by the courts except on grounds that the agency lacked jurisdiction over the subject-matter or the person. Maguire v. Van Meter, 121 N.J.L. 150 (E. & A. 1938); Clay v. Civil Service Commission, 89 N.J.L. 194 (E. & A. 1916); Miske v. Habay, 1 N.J. 368 (1949); Handlon v. Belleville, 4 N.J. 99, 107 (1950); 2 Am. Jur.2d 299, § 493; 30A Am. Jur. 794, § 881. Since the determination of whether there was due process in the revocation proceedings runs parallel to and is subsumed by answer to the question of whether the Director had jurisdiction over the person of defendant, this court elects to answer the question.
N.J.S.A. 39:5-30 provides in pertinent part as follows:
"Every registration certificate and every license certificate to drive motor vehicles may be suspended or revoked, and any person may be prohibited from obtaining a driver's license or a registration certificate, and the reciprocity privilege of any nonresident may be *375 suspended or revoked by the commissioner for a violation of any of the provisions of this Title or on any other reasonable grounds, after due notice in writing of such proposed suspension, revocation or prohibition and the ground thereof."
The question to be answered here is what is "due notice in writing of such proposed suspension." No attack is made upon the specificity of the grounds stated in the notice. Compare Bechler v. Parsekian, 36 N.J. 242 (1961); Cresse v. Parsekian, 81 N.J. Super. 536 (App. Div. 1963), affirmed 43 N.J. 326 (1964); State v. Martin, 75 N.J. Super. 413 (App. Div. (1962)). Rather, it is contended that "due notice" requires actual notice.
It is no longer arguable that a driver's license or privilege may not be revoked without procedural due process. Bechler v. Parsekian, supra. Additionally, the court there stated the proposition that the Director has wide discretion in the procedures he may care to utilize, provided he act fairly. 36 N.J., at p. 255. But that is not to say that procedural due process can be satisfied only with actual service of the notice. "No fool-proof system of giving notice exists. Since perfection is unattainable, the best one can hope for is the creation of methods reasonably calculated to produce the desired result without imposing unrealistically heavy burdens on the party charged with the duty of notification." Gellhorn and Byse, Administrative Law, 852 4th ed. (1960). There is always a risk that notice may not reach the intended person, but this is not the test for legal sufficiency. The test is, rather, whether the notice was reasonably calculated to reach the intended parties. State by Parsons v. Standard Oil Co., 5 N.J. 281, 305-6 (1950); Mullane v. Central Hanover B. & T. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1949).
The statute here involved does not prescribe the method of giving due notice of the proposed suspension. It has been recognized that notice sent by ordinary mail will be received. Cf. Szczesny v. Vasquez, 71 N.J. Super. 347, 354 (App. Div. 1962). The notice in the within case was *376 addressed to defendant at the address he specified as his. Sending the notice through ordinary mail was calculated to reach him and afford him the opportunity of resisting or avoiding the proposed suspension. Short of requiring delivery to addressee only, it would make no difference to the evading licensee whether the notice was sent by regular, registered or certified mail.
Actual receipt of the notice is not a prerequisite in the revocation proceeding. Cf. Pacific Discount Co. v. Jackson, 68 N.J. Super. 331, 334 (App. Div. 1961), reversed on other grounds, 37 N.J. 169, 171 (1962); Szczesny v. Vasquez, supra. If such requirement existed, the scofflaw would have it in his power to thwart the revocation proceedings. The legislative intent runs to the contrary. Under penalty of fine a licensed operator is required to notify the Director in writing of a change in his residence within one week after the change is made. N.J.S.A. 39:3-36.
While it is conceded that defendant did not receive the mailed notices of the proposed revocation proceedings, this is not to say that he was totally unaware that such proceedings were in the making. The original summons issued to him on the occasions of the initial speeding violations contained the notice and warning, "For failure to appear in response to this summons or to pay the prescribed fine and costs, a warrant may be issued for your arrest and your driving privileges in New Jersey may be revoked."
It would thus appear that defendant had notice that a revocation proceeding might be instituted if he chose to ignore the summons. He chose to do so. He compounded his choice by moving without leaving a forwarding address or informing the Director where he could be reached by mail. He should not now be heard to complain of lack of due process. He had it. Any breakdown in the scheme to inform him of the proposed action was of his own making.
Additionally, it is contended by defendant that one cannot be found guilty of an offense unless it was knowingly committed. In other words, defendant would have the court *377 read into the statute a requirement that awould-be violator must intentionally drive while knowing he is on the revoked list in order to be guilty of violating R.S. 39:3-40. It is not the province of this court to read into a statute that which the Legislature did not intend. Halstead v. State, 41 N.J.L. 552, 597 (E. & A. 1879); State v. Gibson, 92 N.J. Super. 397, 400 (App. Div. 1966). "[S]ince the crime is statutory the Legislature is free to require or omit guilty knowledge as an element thereof." State v. DeMeo, 20 N.J. 1, 8 (1955).
There is no inference that may be culled from the statute which would imply that knowledge or intent is to be grafted onto this legislation. Neither is there any constitutional impediment to the enactment of a criminal statute in which mens rea is not an element. Morss v. Forbes, 24 N.J. 341, 358 (1957); State v. DeMeo, supra; Williams v. North Carolina, 325 U.S. 226, 238, 65 S.Ct. 1092, 89 L.Ed. 1577 (1944).
Furthermore, since defendant must have been aware that continued driving after disregard of several summons could result in adverse penal consequences, including loss of one's driving privilege, his behavior was not inadvertent and essentially nonculpable. Cf. State v. Labato, 7 N.J. 137, 148 (1951). On the contrary, defendant did not make "a bona fide, diligent effort * * * to ascertain and abide by the law." State v. DeMeo, 20 N.J., at p. 12.
Since it is stipulated that defendant personally operated his vehicle while his license was suspended or revoked, I find him guilty of the charge and impose a fine of $200.00 and costs.