(935 P.2d 1072)
No. 75,375

State of Kansas, *Appellee*, v. Sheryl M. Lewis, *Appellant*.

Opinion filed April 11, 1997.

*Barry Albin*, of Kansas City, for appellant.

*Delia M. York*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before MARQUARDT, P.J., RULON, J., and TIMOTHY G. LAHEY, District Judge, assigned.

RULON, J.: Defendant Sheryl M. Lewis appeals from her conviction under K.S.A. 1996 Supp. 8-286 and K.S.A. 1996 Supp. 8-287 of driving while a habitual violator. We affirm.

The facts are as follows:

On September 28, 1994, defendant's car broke down on Interstate 635 in Wyandotte County. A Kansas state trooper stopped to assist defendant. Eventually, defendant gave her driver's license to the trooper, who ran a check on the license. The trooper was advised that defendant's license had been revoked as a habitual violator. The trooper then issued a ticket to defendant. In October 1994, the State filed charges against defendant for operating a motor vehicle while a habitual violator.

A preliminary hearing was held, at which time the trooper testified. In addition, the State offered into evidence as an exhibit a certified copy of defendant's driving record. That exhibit is not included in the record on appeal. As we understand, the exhibit established that a proof of mailing was included which certified the Department of Revenue sent a notice that defendant had been found to be a habitual violator. The address on the notice was 4004 Barber Court, Kansas City, Kansas, defendant's last known address.

At the preliminary hearing, defendant testified she resided at 4004 Barber Court in Kansas City, Kansas. She further testified she admitted receiving multiple tickets in the past for driving without insurance. Defendant appeared before a judge on those charges and paid fines for each. Defendant denied ever getting any

kind of notices from the Department of Revenue regarding her tickets or her license until two months after her arrest in this case. Defendant denied any knowledge of being declared a habitual violator until the trooper told her on September 28, 1994.

Defendant was eventually bound over to stand trial. Later, defendant filed a motion to dismiss the charges against her. Defendant argued the habitual violator statutes were unconstitutional and the Department of Revenue's notice of suspension or revocation of her driver's license sent by ordinary mail failed to meet constitutional due process standards. In response, the State argued that driving was a "privilege" and that due process did not apply to proceedings involving the suspension or revocation of a driver's license.

Eventually, the case was submitted to the district court for trial on stipulated facts. Defendant stipulated she had been driving her vehicle on September 28, 1994, and was being assisted by a State trooper when it was discovered she had been declared a habitual violator as of August 16, 1994. Defendant further stipulated she lived at the address to which the Department of Revenue had sent written notice of the declaration, but she alleged she did not receive the notice. The parties stipulated that the Department sent the requisite notice by first-class mail to defendant's address. The court found defendant guilty and defendant now appeals.

## DUE PROCESS

Defendant first contends the Kansas habitual violator statutes, as amended in 1994, violate her due process rights because such statutes provide for notice of the declaration of habitual violator status by regular mail and not by restricted mail.

When a party challenges the constitutionality of a state statute, the issue raised is a question of law giving an appellate court de novo review. *State v. Bryan*, 259 Kan. 143, 145, 910 P.2d 212 (1996). Kansas appellate courts have long recognized that there is a presumption that state statutes are constitutional and they will be struck down only when they clearly violate the constitution. See *In re Care & Treatment of Hendricks*, 259 Kan. 246, 253, 912 P.2d 129 (1996). Kansas courts not only have the authority, but also the

duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute. *State v. Durrant*, 244 Kan. 522, 534, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989).

Both parties spend considerable time arguing whether possession of a driver's license is a property right or a "privilege." Defendant argues that under *Goldberg v. Kelly*, 397 U.S. 254, 262-63, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970), due process applies in this case. The State contends that because the issuance of a driver's license is a privilege, due process of law does not apply. The State relies on *Marbut v. Motor Vehicle Department*, 194 Kan. 620, 622, 400 P.2d 982 (1965), in which our Supreme Court held that a driver's license was a "mere privilege the suspension of which does not deprive the individual of due process of law."

The issue of the application of due process in driver's licenses suspension cases is well settled. In *Dixon v. Love*, 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723 (1977), the United States Supreme Court reviewed the constitutionality of an Illinois statute providing for the suspension of a driver's license based upon official records establishing that the driver has been repeatedly convicted of serious traffic offenses. The *Dixon* court said:

" 'Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.' [*Bell v. Burson*, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971)]." 431 U.S. at 112.

The State's reliance on *Marbut* is misplaced as that decision was issued before the United States Supreme Court's rulings in *Bell* and *Dixon*. In more recent cases, the Kansas Supreme Court has implicitly recognized that due process attaches in cases involving the revocation or suspension of driver's licenses. See *State v. Mertz*, 258 Kan. 745, 758, 907 P.2d 847 (1995); *Carson v. Division of Vehicles*, 237 Kan. 166, Syl. ¶ 1, 699 P.2d 447 (1985) (conclusory affidavit utilized in proceedings under implied consent law is factually deficient as basis for revoking person's driver's license and violates constitutional rights to due process of law). Consequently,

the State's contention that due process standards are inapplicable must be rejected.

Once it is determined that due process applies to a specific governmental action, however, a court must still determine "what process is due to protect against an erroneous deprivation of that interest." *Mackey v. Montrym,* 443 U.S. 1, 10, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979).

Defendant contends the 1994 amendments (although streamlining the process for declaring habitual violators) fail to comport with due process. Defendant argues that due process requires the Department to send a *certified* letter with return receipt requested to the alleged habitual violator. However, defendant cites to no authority for this proposition. The State, on the other hand, relies on *State v. Jones,* 231 Kan. 366, 644 P.2d 464 (1982), for its claim that notice by regular mail to the licensee's last known address is adequate. *Jones,* however, did not deal with due process issues.

In determining "what process is due" in cases of driver's license revocations, some courts have weighed the varying interests of the State and the licensee. In weighing these interests, the courts have concluded that due process does *not* require the State to conduct hearings prior to suspending a person's driver's license because of habitual traffic violations, *Dixon,* 431 U.S. at 115, or for refusing to consent to a preliminary breath analysis test under implied consent laws, *Mackey,* 443 U.S. at 18-19.

The procedural safeguards of the Due Process Clause are designed to prevent erroneous deprivation of important interests by the government. To achieve this end, however, the Due Process Clause does not require perfect procedures.

"[T]he Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error. The Due Process Clause simply does not mandate that all governmental decision-making comply with standards that assure perfect, error-free determinations. [Citation omitted.]" 443 U.S. at 13.

From a due process viewpoint, notice must be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to

present their objections.' " *Lawrence Preservation Alliance, Inc. v. Allen Realty, Inc.*, 16 Kan. App. 2d 93, 105, 819 P.2d 138 (1991), *rev. denied* 250 Kan. 805 (1992) (quoting *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 94 L. Ed. 2d 865, 70 S. Ct. 652 [1950]).

The method in which a person subject to governmental action must be given notice of that action varies depending upon the nature of the protected interest involved. " ' "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." ' [Citations omitted.]" *In re L.S.*, 14 Kan. App. 2d 261, 263, 788 P.2d 875 (1990).

In a number of cases, federal courts have held that mailed notices are sufficient means to provide notice to parties in a wide variety of proceedings. See, *e.g.*, *Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir. 1988), *cert. denied* 488 U.S. 1005 (1989), and cases cites therein. In *Weigner*, the Second Circuit held that the city's action in mailing notices of proposed tax foreclosure actions by ordinary first-class mail to the owner's last known address was sufficient to meet the requirements of due process. 852 F.2d at 648, 651. The court rejected Weigner's claim that she was constitutionally entitled to notice by certified mail, return receipt requested. While such notice "would provide virtually conclusive evidence that the notice was received," due process does not require the use of the most advantageous means of notice. 852 F.2d at 650-51.

Moreover, dicta in decisions from the United States Supreme Court arguably upholds the adequacy of notice by mail in various cases. See *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 490-91, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988) (notice by mail to decedent's known creditors or creditors reasonably ascertainable is not unduly burdensome under due process standards; rejecting publication as sole basis for notice); *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983) (due process required county to give notice to mortgagee prior to foreclosure for unpaid taxes; publicly recorded

mortgage required notice of foreclosure action by mail to mortgagee's last known available address); *Mullane*, 339 U.S. at 319 (postal notification to known trust beneficiaries of accounting would meet due process requirements; rejecting notice by publication only).

When fundamental rights are involved, substantial diligence is required. See *In re L.S.*, 14 Kan. App. 2d 261, Syl. ¶ 2 (due diligence required in locating and personally serving parent in termination of parental rights case). When less significant rights are involved, however, less effort is required by the government to provide notice that is adequate for due process purposes. *Tulsa Professional Collection Services*, 485 U.S. at 483-84.

Is the mailing of a notice of suspension to a licensee's last known address " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections?' " *Lawrence Preservation Alliance, Inc.*, 16 Kan. App. 2d at 105. While some states' statutes require notice to be sent by certified mail, as suggested by defendant in this case, those courts have acknowledged that actual receipt is not required to satisfy due process standards. See, *e.g.*, *Townsend v. Dollison*, 66 Ohio St. 2d 225, 421 N.E.2d 146 (1981); *Davis v. W. Va. Dept. of Motor Vehicles*, 187 W. Va. 402, 419 S.E.2d 470 (1992).

In applying the standards set forth by the United States Supreme Court in *Mullane*, a number of states have upheld service of notices of license suspension and/or revocation by ordinary mail at the licensee's last known address. See, *e.g.*, *State v. Kovtuschenko*, 521 A.2d 718 (Me. 1987); *State v. Coady*, 412 N.W.2d 39, 41 (Minn. App. 1987); *State v. Wenof*, 102 N.J. Super. 370, 376, 246 A.2d 59 (1968), *overruled on other grounds State v. Ferrier*, 294 N.J. Super. 198, 682 A.2d 1227 (1996); *People v. LaGana*, 85 Misc. 2d 1039, 381 N.Y.S.2d 742 (1976); *State v. Bass*, 98 Or. App. 266, 778 P.2d 993, *rev. denied* 308 Or. 500 (1989) (Oregon statute, Or. Rev. Stat. § 809.430 [1995], provides for notice of suspension by ordinary mail in some circumstances but requires certified mail, return receipt requested in other cases); *Rogers v. State*, 641 S.W.2d 404,

406-07 (Tex. App. 1982); *State v. Thomas*, 25 Wash. App. 770, 772-73, 610 P.2d 937 (1980); Annot., 60 A.L.R.3d 427.

Our research has disclosed only one decision where an appellate court held that service of a notice of suspension by ordinary mail was inadequate to meet due process standards. In *State v. Knittel*, 308 N.W.2d 379 (N.D. 1981), the North Dakota Supreme Court upheld the trial court's judgment acquitting Knittel of charges of driving while his license was suspended. There, the court concluded that although the State had sent Knittel a notice giving him an opportunity for a hearing prior to suspension of his license, the notice was sent by ordinary mail. This process, according to the court, "is insufficient to guarantee due process" when the licensee denies receipt of the notice. 308 N.W.2d at 384.

The clear majority of states have held that sending suspension notices by ordinary mail comports with due process. Such notices are reasonably calculated to provide actual notice to the licensee, especially in light of the fact that these states, including Kansas, require licensees to timely notify the responsible state agencies of any change of address. K.S.A. 8-248 (licensee must provide written notice to division within 10 days of change of address).

Based upon the facts of this case, we conclude the Department's action in mailing the notice of suspension to defendant at her last known address by regular mail comported with the minimum requirements of due process. While sending notices by regular mail is no guarantee that each and every licensee will receive the notice, the method is reasonably calculated to provide sufficient notice.

Next, defendant argues that K.S.A. 1996 Supp. 8-255(c) is unconstitutional because it creates an irrebuttable presumption that the licensee received the notice of suspension. In essence, defendant argues the statute creates an irrebuttable presumption as to an element of the crime of driving while a habitual violator, *i.e.*, the driver intended to drive with the knowledge that he/she was a habitual violator.

In making this argument, defendant relies on *Ulster County Court v. Allen*, 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979). In that case, the United States Supreme Court discussed the propriety of mandatory and/or permissive presumptions as they

applied to the State's burden to prove each and every element of an offense in a criminal case.

Defendant's argument, however, is based upon the premise that knowledge of one's status as a habitual violator is an element which must be proven to sustain a conviction of driving while a habitual violator under K.S.A. 1996 Supp. 8-287. The statute in issue simply states:

"Operation of a motor vehicle in this state while one's driving privileges are revoked pursuant to K.S.A. 8-286 and amendments thereto is a severity level 9, nonperson felony." K.S.A. 1996 Supp. 8-287.

The above statute does not specifically require that the driver "knowingly" or "willfully" operate the vehicle. We must consider the above statute to determine if, in fact, the State is required to prove the driver was aware he or she had been declared a habitual violator before he or she may be convicted of violating K.S.A. 1996 Supp. 8-287.

Interpreting any statute, including the habitual violator statutes, is a question of law for the appellate courts. The applicable standards for statutory interpretation are well known.

"Under the fundamental rule of statutory construction, the intent of the legislature governs when that intent can be ascertained from the statute. When a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature, rather than determine what the law should or should not be. The general rule is that a criminal statute must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. [Citation omitted.]" *State v. Profitt*, 261 Kan. 526, 532, 930 P.2d 1059 (1997).

In *Jones*, 231 Kan. 366, the Kansas Supreme Court was faced with interpreting K.S.A. 1981 Supp. 8-262, which prohibited anyone from driving while his or her license was canceled, suspended, or revoked. In that case, the State appealed the trial court's acquittal of Jones on charges of driving while suspended because the State failed to prove Jones received notice that his driver's license was suspended. 231 Kan. at 366. As in this case, Jones denied ever receiving notice that his license was suspended. 231 Kan. at 367.

In reviewing K.S.A. 8-255(b) (Weeks), the court found that to sustain a conviction under the statute:

"(1) that the State must send a copy of the order of revocation or suspension or a written notice thereof to the licensee at the last known address according to the division's records; (2) that when written notice has been mailed, then, after reasonable time for mail delivery has expired, receipt is conclusively presumed; and (3) that in a prosecution under K.S.A. 1981 Supp. 8-262, the State need not prove actual receipt of the notice, actual knowledge of the revocation, or specific intent to violate the statute, by the licensee." 231 Kan. at 368.

Following amendments in 1994, K.S.A. 1996 Supp. 8-255 controls the administrative process in all cases of suspension and revocation of driving privileges. That procedure controls when invoking the statutory prohibitions against driving while one's license is suspended or revoked under K.S.A. 1996 Supp. 8-262 and driving after one's license is revoked as a habitual violator under K.S.A. 1996 Supp. 8-287. See *Profitt*, 261 Kan. 526.

Although the habitual violator statutes were first enacted in 1972, long after other driving statutes were enacted, such statutes are closely related to the general provisions controlling the suspension and revocation of driver's licenses. L. 1972, ch. 32, § 4. These varying statutes have been amended within the same legislation on various occasions. See L. 1994, ch. 353, §§ 1, 3, 5, 6; *State v. Reves*, 233 Kan. 972, 666 P.2d 1190 (1983) (addressing 1982 amendments to K.S.A. 8-255 [Weeks] and K.S.A. 8-285 [Weeks]).

In an effort to distinguish *Jones*, defendant argues that driving while a habitual violator is a felony, while driving while a license is suspended—the offense at issue in *Jones*—is a misdemeanor. Defendant then makes the conclusory argument that "intent is part of the crime" in all felony cases under K.S.A. 21-3201. Defendant relies on K.S.A. 21-3204, which states that "[a] person may be guilty of an offense without having criminal intent if the crime is a misdemeanor or traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability."

While defendant's arguments regarding K.S.A. 21-3204 are compelling, the decision in *Jones* undermines such argument. In *Jones*, the court held that 8-255 was a strict liability statute which did not

require the State to prove the driver was aware that his or her license had been suspended or revoked. While the court in *Jones* noted that K.S.A. 21-3204 allowed strict liability in misdemeanors and traffic offenses, the statute in question made a third violation a class E felony. L. 1981, ch. 43, § 1. The fact that the statute carried some felony penalties did not affect the Supreme Court's decision in *Jones*.

Kansas law recognizes that imposing strict liability in criminal offenses does not necessarily violate due process of law. *State v. Mountjoy*, 257 Kan. 163, 168-69, 891 P.2d 376 (1995). The *Mountjoy* court concluded that a statute imposing misdemeanor penalties against a defendant for practicing the healing arts without a license did not require proof of criminal intent. In reaching this conclusion, the court noted the statute regulated the privilege of medical licensing and involved regulating issues of public health, safety, and welfare. Moreover, the court seemed to conclude that because the statute in question was not a part of the Kansas Criminal Code, the mandate in K.S.A. 21-3201 that "criminal intent is an essential element of every crime defined in [this code]" was inapplicable. 257 Kan. at 176-77.

Based upon *Jones* and *Mountjoy*, we conclude that K.S.A. 1996 Supp. 8-287 does not require that the licensee have actual knowledge of the notice declaring him or her a habitual violator to sustain a conviction. Defendant's argument regarding irrebuttable presumptions is rejected.

Affirmed.