No. 75,375

STATE OF KANSAS, *Appellee*, v. SHERYL M. LEWIS, *Appellant*.

(953 P.2d 1016)

Opinion filed January 30, 1998.

*Barry Albin*, of Kansas City, argued the cause and was on the briefs for appellant.

*Delia M. York*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, was with her on the briefs for appellee.

The opinion of the court was delivered by.

DAVIS, J.: Sheryl M. Lewis was convicted of driving while a habitual violator under K.S.A. 1996 Supp. 8-287, a severity level 9, nonperson felony. She denied receiving the mailed notice of her license revocation as a habitual violator. The Court of Appeals concluded that the offense does not require that a "licensee have actual knowledge of the notice declaring him or her a habitual violator."

*State v. Lewis*, 23 Kan. App. 2d 758, 768, 935 P.2d 1072 (1997). Lewis petitions this court for review of the Court of Appeals' decision. We reverse and hold that knowledge of status is an essential element of the offense of driving while a habitual violator. K.S.A. 1996 Supp. 8-287.

On September 28, 1994, the defendant's car broke down on I-635 in Wyandotte County. A Kansas Highway Patrol trooper stopped to render assistance. During the course of rendering assistance, the trooper ran a license check and discovered that the defendant's license had been revoked as a habitual violator.

The State filed charges against the defendant for driving while a habitual violator under K.S.A. 1996 Supp. 8-287. At the preliminary hearing, the State offered into evidence the trooper's testimony as well as a certified copy of the defendant's driving record and the order revoking her license as a habitual violator. Under K.S.A. 1996 Supp. 8-286, whenever the records of the Division of Vehicles disclose that a licensee meets the requirements of a habitual violator, the licensee's license is immediately revoked for a period of 3 years. Notification to the licensee that he or she has been declared a habitual violator and his or her license has been revoked is sent by regular mail to the address listed on the license. See K.S.A. 1996 Supp. 8-255(d).

There is no dispute that the order of revocation was sent to the defendant's address listed on her driver's license. The defendant testified that she resided at the address listed on her driver's license. She admitted that she had received multiple tickets in the past for driving without insurance and that she paid the fines. However, she denied receiving any notices from the Division of Vehicles regarding those tickets or her license until 2 months after her arrest in this case. She testified that she had no knowledge that she had been declared a habitual violator.

The district court bound the defendant over for trial, noting that the driving record reflected that the Department of Revenue had sent the defendant three suspension notices prior to her arrest. The court stated that in light of the notices, the defendant's testimony that she never got them was "a little bit difficult for the Court to . . . believe frankly."

The defendant filed a motion to dismiss before trial on the grounds that the habitual violator statutes were unconstitutional. She argued that the notice requirements of the habitual violator statutes were inadequate to satisfy due process. She also argued that if K.S.A. 1996 Supp. 8-287 does not require proof of notification, it was unconstitutional because it established an irrebuttable presumption that notice had been received. The trial court took the matter under advisement and later denied her motion.

The case was submitted to the district court on stipulated facts. The defendant stipulated that she had been driving her vehicle on September 28, 1994, and was being assisted by a state trooper when a check of driving records revealed that she had been declared a habitual violator on August 16, 1994. The defendant further stipulated that she lived at the address where the notice declaring her a habitual violator was sent. However, the defendant denied that she received the notice. Based on these facts, the court found the defendant guilty, sentenced her to 6 months in prison, and placed her on probation for 2 years.

The defendant argued in her appeal to the Court of Appeals that K.S.A. 1996 Supp. 8-286 and K.S.A. 1996 Supp. 8-287, the habitual violator statutes, were unconstitutional because they failed to give adequate notice prior to a person being declared a habitual violator and because they set up an irrebuttable presumption that the notice declaring a person a habitual violator had been received. As part of the latter argument, she contended that such a presumption invades the province of the factfinder in determining whether the element of criminal intent was satisfied.

The Court of Appeals determined that sending suspension notices by first class mail was not a violation of due process because it is reasonably calculated to give notice. 23 Kan. App. 2d at 765. The Court of Appeals then determined that K.S.A. 1996 Supp. 8-287 does not require that the licensee have actual notice that he or she has been declared a habitual violator in order to sustain a conviction. 23 Kan. App. 2d at 768. We granted the defendant's petition for review.

## Discussion

The dispositive issue in this case is whether an accused's knowledge of his or her status as a habitual violator is an essential element

of the offense of driving while a habitual violator under K.S.A. 1996 Supp. 8-287. The Court of Appeals affirmed the trial court and held the offense to be one of strict liability: "K.S.A. 1996 Supp. 8-287 does not require that the licensee have actual knowledge of the notice declaring him or her a habitual violator to sustain a conviction." 23 Kan. App. 2d at 768. We disagree and, for the reasons set forth below, hold that an accused's knowledge of his or her status as a habitual violator is an essential element of the offense of driving while a habitual violator under K.S.A. 1996 Supp. 8-287.

## Standard of Review

The resolution of the above issue involves interpretation of the Kansas habitual violator statutes, K.S.A. 1996 Supp. 8-286 and K.S.A. 1996 Supp. 8-287. The issue also involves interpretation of the provisions of the Kansas Criminal Code dealing with intent and strict liability crimes, K.S.A. 21-3201 and K.S.A. 21-3204, as well as K.S.A. 21-3102, concerning the application of the Kansas Criminal Code. Interpretation of a statute is a question of law, and our review is unlimited. *State v. Robinson*, 261 Kan. 865, 874, 934 P.2d 38 (1997). A fundamental rule of statutory construction is that the intent of the legislature governs when that intent can be ascertained from the statute. When a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature rather than determine what the law should or should not be. *State v. Proffitt*, 261 Kan. 526, 532, 930 P.2d 1059 (1997). The general rule is that a criminal statute must be strictly construed in favor of the accused and any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. However, this rule is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Roderick*, 259 Kan. 107, 110, 911 P.2d 159 (1996).

## Court of Appeals' Decision

The Court of Appeals determined that the offense of driving while a habitual violator under K.S.A. 1996 Supp. 8-287 does not

require that a "licensee have actual knowledge of the notice declaring him or her a habitual violator," 23 Kan. App. 2d at 768, but instead the offense is one of strict liability. In reaching this conclusion, the Court of Appeals relied upon two prior decisions of this court, *State v. Jones*, 231 Kan. 366, 644 P.2d 464 (1982), and *State v. Mountjoy*, 257 Kan. 163, 891 P.2d 376 (1995). Within the context of these two cases and in response to arguments advanced by the defendant in this case, the Court of Appeals also discussed the application and requirements of the Kansas Criminal Code with regard to intent. See 23 Kan. App. 2d at 766-68.

On the subject of intent, the Kansas Criminal Code states:

"Except as otherwise provided, a criminal intent is an essential element of every crime defined by this code. Criminal intent may be established by proof that the conduct of the accused person was intentional or reckless. Proof of intentional conduct shall be required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a reckless manner." K.S.A. 21-3201(a).

K.S.A. 21-3204 provides, however, that "[a] person may be guilty of an offense without having criminal intent if the crime is a misdemeanor or traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."

In this case, we deal with a crime against the State of Kansas made criminal not by the Kansas Criminal Code but by another statute of this state, K.S.A. 1996 Supp. 8-287. Not all crimes in this state are contained within the Kansas Criminal Code. See K.S.A. 21-3102. However, "[u]nless expressly stated otherwise, or the context otherwise requires, the provisions of [the Kansas Criminal Code] apply to crimes created by statute other than in [the] code." K.S.A. 21-3102(2).

The defendant argued before the Court of Appeals and argues now before this court that the offense of driving while a habitual violator is subject to the Kansas Criminal Code because it is made criminal by Kansas statutes. K.S.A. 21-3202(2). The defendant further argues that the Kansas Criminal Code authorizes strict liability only "if the crime is a misdemeanor or traffic infraction" and the statute defining the offense clearly indicates a legislative purpose

to impose absolute liability. K.S.A. 21-3204. The defendant contends that the language used in K.S.A. 1996 Supp. 8-287 does not clearly indicate a legislative purpose to impose absolute liability and that because K.S.A. 1996 Supp. 8-287 is a felony, not a misdemeanor or a traffic infraction, the provisions of K.S.A. 21-3204 prohibit absolute liability. Thus, the defendant concludes that knowledge of status as a habitual violator must be an essential element of the offense.

The Court of Appeals acknowledged the compelling nature of the defendant's arguments but concluded that our decision in *State v. Jones*, 231 Kan. 366, "undermines such argument." 23 Kan. App. 2d at 767. However, we note that *Jones* did not involve a *felony* charge but rather concerned the *misdemeanor* offense of driving while suspended in violation of K.S.A. 1981 Supp. 8-262. Since the charge in *Jones* was a misdemeanor, it was not necessary for us in that opinion to discuss the provisions of K.S.A. 21-3204 regarding the application of the intent requirements of the Kansas Criminal Code to crimes located outside that code.

## State v. Jones

*Jones* involved a prosecution for driving while one's license is suspended under K.S.A. 1981 Supp. 8-262. K.S.A. 1996 Supp. 8-262(a)(1) establishes the offense of driving while one's license is canceled, suspended, or revoked. It provides:

"Any person who drives a motor vehicle on any highway of this state at a time when such person's privilege so to do is canceled, suspended or revoked shall be guilty of a: (A) Class B nonperson misdemeanor on the first conviction; (B) class A nonperson misdemeanor on the second conviction; and·(C) *severity level·9, nonperson felony on a third or subsequent conviction.*" (Emphasis added.)

In *Jones*, the defendant, not unlike the defendant in this case, testified that he did not know that his license had been suspended and that he had not received any written notice of the suspension. He also testified that he had not lived at the address shown on the order of suspension for 2 years. The State's evidence consisted of the testimony of the arresting officer who had seen Jones drive a motor vehicle, a certified copy of the suspension order, and other documents which did not include a statement of mailing.

Unlike the instant case, in *Jones* there was no evidence that either a copy of the suspension order or any written notification thereof was ever mailed or otherwise given to the defendant. Accordingly, in *Jones*, we did not sustain the State's appeal because there was no showing in the record that the following provisions of K.S.A. 8-255(b) (Ensley) (now K.S.A. 1996 Supp. 8-255[d]), were complied with: " 'Upon suspending or revoking the license of any person as authorized by this act, *the division immediately shall notify the licensee in writing.*' " 231 Kan. at 368. We held that "[o]nce the State has complied with the mandatory notice requirement of K.S.A. 8-255(b) by mailing, the presumption of receipt arises and is not rebuttable. Evidence of nonreceipt may, however, be introduced by the accused in mitigation at time of sentencing." 231 Kan. at 368.

We further concluded in *Jones*

"(1) [t]hat the State must send a copy of the order of revocation or suspension or a written notice thereof to the licensee at the last known address according to the division's records; (2) that when written notice has been mailed, then, after reasonable time for mail delivery has expired, receipt is conclusively presumed; and (3) that in a prosecution under K.S.A. 1981 Supp. 8-262, the State need not prove actual receipt of the notice, actual knowledge of the revocation, or specific intent to violate the statute, by the licensee." 231 Kan. at 368.

The crucial difference between *Jones* and this case is that *Jones* involved the misdemeanor offense of driving while suspended. Because the charge in *Jones* was a misdemeanor, we did not deal with the application of K.S.A. 21-3204 and that statute did not form any basis for the opinion. Nevertheless, in its opinion in the instant case, the Court of Appeals relies on that portion of the driving while suspended offense, K.S.A. 1996 Supp. 8-262, which calls for a felony conviction, stating:

"While defendant's arguments regarding K.S.A. 21-3204 are compelling, the decision in *Jones* undermines such argument. In *Jones*, the court held that 8-255 was a strict liability statute which did not require the State to prove the driver was aware that his or her license had been suspended or revoked. While the court in *Jones* noted that K.S.A. 21-3204 allowed strict liability in misdemeanors and traffic offenses, the statute [8-262] in question made a third violation a class E felony. L. 1981, ch. 43, § 1. The fact that the statute carried some felony penalties

did not affect the Supreme Court's decision in *Jones*." 23 Kan. App. 2d at 767-68.

We realize that the language used in *Jones*, "in a prosecution under K.S.A. 1981 Supp. 8-262" could be read to include a "felony" prosecution for the third offense of driving while suspended under 8-262. However, *Jones* involved a misdemeanor, and as we have said above, the *Jones* decision is not based upon a consideration of K.S.A. 21-3204. *Jones* governs all misdemeanor charges filed under the provisions of 8-262. While there is authority to the contrary, Kansas is not alone in imposing absolute liability for misdemeanor driving while suspended offenses. See *State v. Grotzky*, 222 Neb. 39, 42-44, 382 N.W.2d 20 (1986), *State v. Morrison*, 2 Ohio App. 3d 364, 367, 442 N.E.2d 114 (1982), and *State v. Buttrey*, 293 Or. 575, 580-87, 651 P.2d 1075 (1982). But see *Jeffcoat v. State*, 639 P.2d 308, 313 (Alaska App. 1982); *State v. Keihn*, 542 N.E. 2d 963, 968 (Ind. 1989); *State v. McCallum*, 321 Md. 451, 583 A.2d 250 (1991); *Reed v. Commonwealth*, 15 Va. App. 467, 471, 424 S.E.2d 718 (1992). *Jones*, however, does not apply to felony offenses.

### State v. Mountjoy

As further authority for its holding that "K.S.A. 1996 Supp. 8-287 does not require that the licensee have actual knowledge of the notice declaring him or her a habitual violator to sustain a conviction," the Court of Appeals cites our decision in *State v. Mountjoy*, 257 Kan. 163. See 23 Kan. App. 2d at 768. The Court of Appeals relies upon two aspects of *Mountjoy* to support its holding that driving while a habitual violator is an absolute liability crime: (1) Because the offense of driving while a habitual violator is defined outside the Kansas Criminal Code, it is not subject to the mandatory intent provisions of the Code; and (2) the offense is a public welfare offense calling for an exception to the intent requirement. 23 Kan. App. 2d at 768. Both of these aspects are discussed in detail below.

*Mountjoy* involved the question of whether intent was a required element of the crime of practicing the healing arts without a license. In *Mountjoy*, we noted that under K.S.A. 65-2803(d), practicing the healing arts without a license is made a class B misde-

meanor. We addressed the provisions of K.S.A. 21-3204 which provide that a person can be convicted of an offense without having criminal intent if (1) the crime is a misdemeanor and (2) the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described. 257 at 177.

We also relied upon the well-recognized exception for some public welfare offenses to the common-law rule which requires the element of criminal intent to hold a person criminally responsible for his or her conduct. We stated:

"Among all the objects sought to be secured by government, none is more important that the preservation of the public health. [Citation omitted.] It is fundamental that where a statute is designed to protect the public, the language of that statute must be construed in the light of the legislative intent and purpose and is entitled to a broad interpretation so that its public purpose may be fully carried out." 257 Kan. at 177.

Thus, we concluded:

"The purpose of K.S.A. 65-2803 is to protect the public from the unauthorized practice of the healing arts. The unauthorized practice of the healing arts is an offense which, under the public welfare doctrine, does not require the element of criminal intent." 257 Kan. at 177.

### Is Driving While a Habitual Violator in Violation of K.S.A. 1996 Supp. 8-287 Subject to the Criminal Code?

The conclusion of the Court of Appeals that because the offense of driving while a habitual violator in violation of K.S.A. 1996 Supp. 8-287 is a crime not defined in our criminal code, it is not subject to the provisions of the code, is undermined by the criminal code itself. The Kansas Criminal Code specifically provides that "[u]nless expressly stated otherwise, or the context otherwise requires, the provisions of this code apply to crimes created by statute other than in this code." K.S.A. 21-3102(2). Thus, by the operation of K.S.A. 21-3102(2), the intent requirement in K.S.A. 21-3201 has applicability to crimes outside the Kansas Criminal Code.

Also, K.S.A. 21-3204 which provides exceptions to the intent requirement contained in K.S.A. 21-3201, states:

"A person may be guilty of an offense without having criminal intent if the crime is a misdemeanor or traffic infraction and the statute defining the offense

clearly indicates a legislative purpose to impose absolute liability for the conduct described."

Traffic infractions are those offenses listed in K.S.A. 8-2118 and amendments thereto. See K.S.A. 21-3105(2). If K.S.A. 21-3201 was not meant to apply to those offenses outside of the Kansas Criminal Code, there would be no need for K.S.A. 21-3204 to exempt traffic infractions from its intent requirement.

Further, this court has in the past applied the intent requirement found in K.S.A. 21-3201 and its exceptions in K.S.A. 21-3204 to crimes which are not a part of the Kansas Criminal Code. In *State v. JC Sports Bar, Inc.*, 253 Kan. 815, 861 P.2d 1334 (1993), this court addressed the question of whether K.S.A. 1992 Supp. 41-2615, permitting the consumption of alcohol by a minor on the premises where such alcohol is sold, was a strict liability offense. In analyzing the statute, we cited K.S.A. 21-3204 as an exception to the general requirement of intent and discussed whether 41-2615 met its requirements. We concluded that the statute did not, as there was no clearly indicated legislative purpose that it be a strict liability offense as required by K.S.A. 21-3204. 253 Kan. at 821-23.

Thus, it is clear that the intent requirement of K.S.A. 21-3201 applies regardless of whether the criminal offense is found in the criminal code or elsewhere in the statutes. The question remains, however, whether driving while a habitual violator is excepted by the provisions of K.S.A. 21-3102(2), which provides that the rules governing criminal law such as intent apply to offenses outside the criminal code "[u]nless expressly stated otherwise, or the context otherwise requires."

K.S.A. 1996 Supp. 8-287 does not expressly state that intent or knowledge is not a requirement. It simply provides that "[o]peration of a motor vehicle in this state while one's driving privileges are revoked pursuant to [the habitual violator statute] is a severity level 9, nonperson felony." The question of intent in K.S.A. 1996 Supp. 8-287 is a relatively recent problem. Prior to its amendment in 1994, K.S.A. 8-286 provided that in order to declare someone a habitual violator, a petition had to be filed seeking a

hearing. See *State v. Proffitt*, 261 Kan. at 533. A summons was then served on the person to show cause why he or she should not be convicted of being a habitual violator. Under this statutory scheme, there was no question that a defendant charged with driving while a habitual violator knew his or her status and thus possessed the requisite intent or knowledge.

Prior to 1994, K.S.A. 1993 Supp. 8-287 provided:

"It shall be unlawful for any person to operate any motor vehicle in this state while any court order declaring such person to be a habitual violator and prohibiting such operation remains in effect. Any person found to be a habitual violator under the provision of this act who is thereafter convicted of operating a motor vehicle in this state, while the order of the court prohibiting such operating is in effect, shall be guilty of a severity level 9, nonperson felony."

Under the amended statutory scheme established in 1994, however, no such petition or hearing is required. Instead, whenever the Division of Vehicles finds that a person's record discloses convictions sufficient to make that person a habitual violator, the division promptly revokes the license, sending the person notice of his or her status as a habitual violator by regular mail. K.S.A. 1996 Supp. 8-286; K.S.A. 1996 Supp. 8-255(d). K.S.A. 1996 Supp. 8-286 (as amended in 1994) provides:

"Whenever the files and records of the division shall disclose that the record of convictions of any person is such that the person is a habitual violator, as prescribed by K.S.A. 8-285 and amendments thereto, the division promptly shall revoke the person's driving privileges for a period of three years."

The intent of this amendment was to streamline the procedure and lessen the loads of county and district attorneys. See *Proffitt*, 261 Kan. at 531.

The meaning of "habitual violator" was not changed in the 1994 amendments. A habitual violator is any person who, within the immediately preceding 5 years, has been convicted in this or any other state three or more times of:

"(1) Vehicular homicide, as defined by K.S.A. 21-3405 and amendments thereto or as prohibited by any ordinance of any city in this state or any law of another state which is in substantial conformity with that statute;

"(2) violating K.S.A. 8-1567 and amendments thereto, or violating an ordinance of any city in this state or any law of another state, which ordinance or law declares to be unlawful the acts prohibited by that statute;

"(3) driving while the privilege to operate a motor vehicle on the public highways of this state has been canceled, suspended or revoked, as prohibited by K.S.A. 8-262 and amendments thereto or as prohibited by any ordinance of any city in this state or any law of another state which is in substantial conformity with that statute;

"(4) perjury resulting from a violation of K.S.A. 8-261a and amendments thereto or resulting from the violation of a law of another state which is in substantial conformity with that statute;

"(5) violating the provisions of the fifth clause of K.S.A. 8-142 and amendments thereto, relating to fraudulent applications, or violating the provisions of a law of another state which is in substantial conformity with that statute;

"(6) any crime punishable as a felony, if a motor vehicle was used in the perpetration of the crime;

"(7) failing to stop at the scene of an accident and perform the duties required by K.S.A. 8-1602 through 8-1604, and amendments thereto, or required by any ordinance of any city in this state or a law of another state which is in substantial conformity with those statutes; or

"(8) violating the provisions of K.S.A. 40-3104 and amendments thereto, relating to motor vehicle liability insurance coverage or an ordinance of any city in this state, which is in substantial conformity with such statute." K.S.A. 8-285(a).

Is it significant that the statute at issue, K.S.A. 1996 Supp. 8-287, does not expressly require knowledge or intent and is not included in the criminal code? Both of these points were relied upon by the Court of Appeals as reasons for concluding that the offense was a strict liability offense. However, far more than simple omission is necessary to justify dispensing with an intent requirement. *United States v. United States Gypsum Co.*, 438 U.S. 422, 438, 57 L. Ed. 2d 854, 98 S. Ct. 2864 (1978). As stated above, inclusion in the criminal code is not a determining factor. K.S.A. 21-3102(2) provides that the Kansas Criminal Code applies to crimes created by statute other than those in the code. Thus, while 8-287 does not appear in the criminal code, the provisions of the code nevertheless apply.

The initial offense of driving while a habitual violator, as outlined by the legislature in 1972, set up a statutory scheme wherein the district court was involved in determining whether a defendant was a habitual violator. Given this statutory scheme, it is clear that the

legislature originally contemplated that knowledge of status by a defendant would be required. Clearly, intent was an essential element of the offense when enacted in 1972.

While the language and the procedure for notification changed in 1994, there is no clear indication that the legislature intended to dispense with knowledge of status as an essential element. As a result, such knowledge must be deemed to be an essential element unless the statute fits within the exception to the K.S.A. 21-3201 intent requirement contained in K.S.A. 21-3204, which states:

"A person may be guilty of an offense without having criminal intent if the crime is a misdemeanor or traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."

## Does K.S.A. 1996 Supp. 8-287 Fall Within the Public Welfare Doctrine?

Kansas has long recognized an exception to the general intent requirement for those offenses which come under the "public welfare doctrine." See *State v. Mountjoy*, 257 Kan. 163, 175-76, 891 P.2d 376 (1995); *State v. Logan*, 198 Kan. 211, 215-17, 424 P.2d 565 (1967); *State, ex rel.*, v. *Fairmont Foods Co.*, 196 Kan. 73, 81-82, 410 P.2d 308 (1966); *State v. Merrifield*, 180 Kan. 267, 269, 303 P.2d 155 (1956). Under the public welfare doctrine, the legislature may, for the protection of public interest, forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer. *State v. Logan*, 198 Kan. at 216. Offenses which come under this doctrine include those which involve the exercise of police power for the public welfare. See *State v. Logan*, 198 Kan. at 215.

There exists a strong public policy with regard to the regulation of driving in this state. The legislative history of the habitual violator statutes indicates a firm intention on the part of the legislature that driving while a habitual offender is a public welfare offense. In interpreting the habitual violator statutes, we have indicated that "[t]he government's interest in keeping habitual violators off Kansas roads is a substantial and important one—both from public safety and public welfare perspectives." *State v. Heironimus*, 262

Kan. 796, 807, 941 P.2d 1356 (1997). S.B. 539, which created the habitual violator statutes, had, as its purpose:

"(a) To provide maximum safety for all persons who travel or otherwise use public highways of the state;

"(b) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct, attitude and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of this state, the orders of its courts and the statutorily required acts of its administrative agencies; and

"(c) To discourage repetition of criminal acts by individuals against the peace and dignity of this state and its political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual violators who have been convicted repeatedly of violations of traffic laws." L. 1972, ch. 32, § 1.

That K.S.A. 1996 Supp. 8-287 is a public welfare statute involving public safety may not be denied. However, the public welfare nature of the offense does not exempt it from the provisions of the Kansas Criminal Code. See K.S.A. 21-3204.

K.S.A. 21-3204 came into being with the adoption of the Kansas Criminal Code. L. 1969, ch. 180, § 21-3204. The criminal code was based almost entirely on recommendations of the Kansas Judicial Council. See *State v. Robinson*, 239 Kan. 269, 272, 718 P.2d 1313 (1986). The recommendations of the Kansas Judicial Council were published in a special report in the Kansas Judicial Council Bulletin in April of 1968. In the comments to the section concerning strict liability offenses, the Judicial Council noted the public welfare exception to intent and its recent enlargement by courts. The Judicial Council then stated that "[K.S.A. 21-3204] represents an effort to limit strict liability crimes to those situations where the penalty is relatively mild and where the legislature has clearly indicated an intention to dispense with criminal intent." pp. 32-33. This section was passed without amendment by the legislature.

The legislature, in adopting the Kansas Criminal Code in 1969, limited the public welfare doctrine as an exception to intent to those offenses which are (1) misdemeanors or traffic infractions and (2) clearly indicate a legislative purpose to impose absolute liability for the conduct described. K.S.A. 21-3204. This concept is in accord with the "contemporary view" disfavoring strict liability

offenses. See *State v. McCallum,* 321 Md. 451, 583 A.2d 250 (1991).

We conclude that the public welfare exception to intent does not apply in this case because the offense involved is not a misdemeanor or traffic infraction and because the statute creating the offense does not clearly state that it is to be an absolute liability offense.

## Knowledge

Having determined that an accused's knowledge of his or her status as a habitual violator is a required element of the crime of driving while a habitual violator, the question we must now resolve is the quality of knowledge required. In *State v. McCallum,* the Maryland Court of Appeals in a concurring opinion by Judge Chasanow noted the following with reference to the element of proof of knowledge of status as a habitual violator:

> "There is more than one mental state that may constitute 'knowledge.' The first and highest form of 'knowledge' is actual knowledge, that is, an actual awareness or an actual belief that a fact exists. A second form of 'knowledge' is what has often been called 'deliberate ignorance' or 'willful blindness.' R. Perkins, Criminal Law, Ch. 7, § 4 at 687 (1957). The latter form of 'knowledge' exists where a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth. See 1 W. LaFave & A. Scott, Substantive Criminal Law, § 3.5 at 307 (1986), and authorities cited therein." 321 Md. at 458-59.

Judge Chasanow went on to note:

> "Deliberate ignorance requires a conscious purpose to avoid enlightenment; a showing of mere negligence or mistake is not sufficient. Also, 'deliberate ignorance' is a *form* of knowledge, not a *substitute* for knowledge." 321 Md. at 461.

Judge Chasanow stated that if an accused was deliberately ignorant of his or her status, such a state of mind would be sufficient to satisfy the intent requirement in the Maryland statute. 321 Md. at 461.

We agree with the excerpt from Judge Chasanow's concurring opinion. Proof of knowledge of status as a habitual violator may be by circumstantial evidence, including deliberate ignorance on the part of the accused. Further, in prosecutions under K.S.A. 1996

Supp. 8-287, the finder of fact may, but is not required to infer knowledge of status from the fact that notification of the accused's status as a habitual violator was mailed to the accused at the accused's last known official address. See *State v. Keihn*, 542 N.E. 2d 963, 968 (Ind. 1989) (holding that where the Bureau of Motor Vehicles mails notice of license suspension to the defendant's last known address, proof of such notice would allow the trial court to infer a defendant's knowledge).

### The Defendant's Constitutional Arguments

The defendant argues in this case that the statutory scheme now in place for notification that one is a habitual violator is unconstitutional because it establishes an irrebuttable presumption of receipt once mailed to the accused. Based upon our holding that knowledge of status as a habitual violator is an essential element of the offense of driving while a habitual violator under K.S.A. 1996 Supp. 8-287, there is no irrebuttable presumption under notification procedures for habitual violators.

The defendant also argues that the notification procedure provided for in K.S.A. 1996 Supp. 8-286 and K.S.A. 1996 Supp. 8-287 are insufficient to satisfy the requirements of due process. The defendant's argument does not center, as was the case in *State v. Heironimus*, 262 Kan. 796, on the revocation procedure itself, but rather on the notice requirement and whether the statute properly gave her notice so that she could contest the validity of her previous record as well as notice that she could be subjected to criminal liability.

From a due process standpoint, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950). The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, considering the subject of the statute. 339 U.S. at 315.

Because we hold that an accused's knowledge of status as a habitual violator is an essential element of the offense of driving while

a habitual violator, we are not confronted with a due process problem in the defendant's case. Suffice it to say, the notice provisions of 8-255(d) contained within the habitual violator statutes comport with notice requirements of the Due Process Clause of the United States Constitution.

The decisions of the Court of Appeals and the district court are reversed, and the case is remanded to the district court for retrial in accordance with this opinion.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.