NOT DESIGNATED FOR PUBLICATION

No. 125,920

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYAN WAELTZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; MICHAEL P. JOYCE, judge. Submitted without oral argument. Opinion filed April 26, 2024. Affirmed.

*John Ivan*, of John Ivan Law Office, of Shawnee Mission, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Kyleigh Rupe*, legal intern, *Stephen M. Howe*, *district attorney*, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., SCHROEDER, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: Bryan Waeltz appeals his conviction for possession of methamphetamine. He argues there is insufficient evidence to sustain a finding of guilt. The evidence at Waeltz's bench trial showed that Waeltz, as the passenger in a car, knew of a pipe containing methamphetamine found in his sweatshirt. The trial court convicted Waeltz, finding that he intended to and did knowingly possess methamphetamine. After applying the proper standard of review to the record, we hold that sufficient evidence supports Waeltz's conviction, and we affirm.

1

*One car, one driver, one passenger, and one pipe lead to one conviction.*

In March 2020, Sergeant Ian Mills of the Olathe Police Department stopped a car for failing to signal for 100 feet continuously before making a lane change. When Mills approached the vehicle, he noted two occupants in the car: the driver, John Baldovin, and passenger, Bryan Waeltz.

Mills saw unusual behavior from Baldovin. Baldovin appeared overly nervous — his hands were visibly shaking, he had erratic movements, and he gave frantic statements that provided "unsolicited information not pertinent to the stop." Mills also noticed that Waeltz avoided eye contact with Mills and had a hooded sweatshirt in his lap. Based on Baldovin's behavior and mannerisms, Mills suspected that drugs were in the car.

Mills requested both occupants' driving licenses and Baldovin's proof of insurance. At first, Waeltz refused to give Mills his license but later voluntarily provided a valid license. Baldovin provided a Kansas driving license but told Mills it was not valid and that he had a valid Missouri license that he could not locate. Baldovin also could not locate proof of insurance. Mills returned to his car to check the validity of the licenses.

While Mills checked the validity of the licenses, Officers Pettit and Thomas arrived to assist Mills. After speaking with Mills, Pettit approached the car and asked Baldovin and Waeltz to exit. Pettit's body camera shows that Waeltz no longer had the sweatshirt in his lap. Once the two were out of the car, Mills retrieved his K9, Axle, and conducted a perimeter sniff of the car. Axle deviated from Mills' directed path to a partially opened front passenger side window. This caused Axle to become increasingly excited, focusing his respirations. Mills testified that Axle is an aggressive alert dog which means he provides a scratch alert response to the location he smells drugs. After this alert, Mills allowed Axle to sniff inside the car, yielding another alert to the center console in the car.

2

Based on Axle's alert, Mills searched the car and found a marijuana pipe in the driver's side door; a "snorter" or a straw used to snort methamphetamine in the center console; and a glass methamphetamine pipe that contained a crystalline substance in the sweatshirt on the front passenger floorboard. A field test of the substance was positive for methamphetamine. Mills then placed Baldovin and Waeltz under arrest and put both in separate police cars for interviews.

*Both men talked with the officers.*

Mills first interviewed Baldovin, who agreed to talk after waiving his *Miranda* rights. During the interview, Baldovin admitted that the marijuana pipe was his but denied possession of the straw and methamphetamine pipe. Baldovin did admit to the use of methamphetamine but adamantly denied knowledge of the straw and pipe found in his car.

Mills then interviewed Waeltz, who agreed to talk post-*Miranda*. Waeltz denied knowing of any drugs in the car and denied ownership of the pipe found in the hooded sweatshirt. At first, Waeltz claimed he did not own the sweatshirt but later said it belonged to his sister and that he brought it with him when he got into the car. He also later claimed that he knew the pipe was in the car and that Baldovin had given him the pipe for Waeltz to conceal from the police. Waeltz further admitted that he knew that it was a methamphetamine pipe when Baldovin handed it to him and that he should not have taken and concealed it. Waeltz also admitted to methamphetamine use earlier in the day.

Based on Waeltz's statements, Mills interviewed Baldovin once more. Baldovin maintained the same position that the pipe did not belong to him and denied giving it to Waeltz. Baldovin claimed that he did not know it was in the car.

3

The State charged Waeltz with possession of methamphetamine, a drug severity level 5 felony, and possession of drug paraphernalia, a class B nonperson misdemeanor.

*The court finds Waeltz guilty.*

At the bench trial, the State called four witnesses: John Baldovin, Sergeant Ian Mills, Officer Tyler Pettit, and Danielle Bilbrey. Officer Pettit testified to the same general facts as Mills and confirmed that when he approached the car, Waeltz no longer had the hooded sweatshirt on his lap. Danielle Bilbrey testified to her involvement in the case as a forensic scientist. Bilbrey tested the samples from the pipe found in Waeltz's sweatshirt, weighing .42 grams. The sample tested positive for methamphetamine.

The trial court found Waeltz guilty of the possession of methamphetamine and possession of drug paraphernalia. The court made several findings of fact and conclusions of law in its ruling. The court applied the possession definition found in the statute and the elements for possession of a controlled substance from PIK Crim. 4th 57.050. The court found that "even if you accept Mr. Waeltz's statements during the course of the interview by Officer Mills, he was aware there was a meth pipe. He put it into his item of clothing that he brought with him." The court added that Waeltz exercised control over and knew the pipe was concealed within the sweatshirt.

Waeltz received a suspended prison term of 17 months, with 12 months of probation for the felony charge, to run concurrent to a suspended prison term of 6 months, with 12 months of probation for the misdemeanor. Waeltz appealed his convictions.

*The rules we must follow are well established.*

Waeltz argues that the State failed to present sufficient evidence to prove that he possessed methamphetamine. His sufficiency attack on his conviction materializes in three arguments: (1) He did not exclusively possess methamphetamine; (2) he did not have the requisite criminal intent to use the methamphetamine; and (3) he was an innocent possessor.

A review of the relevant caselaw is helpful. Appellate courts review sufficiency challenges in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We must not reweigh evidence or resolve conflicts in the evidence, nor pass on the credibility of witnesses. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). The burden on the challenging party is a high one, and "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt" will a court reverse a guilty verdict. *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

Waeltz focuses his argument on the legal elements of possession and intent to use methamphetamine. In the absence of raising other challenges to any other element of his conviction, such challenges are waived. See *Meggerson*, 312 Kan. at 246.

*The law of possession guides our ruling.*

Waeltz's possession of methamphetamine conviction is based on K.S.A. 2019 Supp. 21-5706(a), which required the State to simply prove that Waeltz possessed methamphetamine. At the time of Waeltz's charge, possession was defined as "joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2019 Supp. 21-5701(q).

5

In that definition, "knowledge and intent" are the operative terms which are defined:

"A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result. . . .

"A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2019 Supp.21-5202(h), (i).

Waeltz claims the State failed to prove that he exercised exclusive control over the pipe. In support, he argues that under the statute, the trial court erred by "failing to consider evidence of what constituted 'exclusive control' under K.S.A. 21-5706, and *State vs. Lewis,* [263 Kan. 843, 953 P.2d 1016 (1998)]." He also claims that the trial court "seemed to consider possession of [m]ethamphetamine as an 'absolute liability offense,' such as some misdemeanors and traffic infractions, which require no intent." Waeltz argues that the trial court disregarded the intent element of his conviction.

Under the statute in effect at the time Waeltz committed the crime, there was no requirement for the State to prove Waeltz exercised *exclusive* control. K.S.A. 2019 Supp. 21-5706(a). Had the statute imposed such a requirement, the evidence showed that Waeltz knew the nature of the pipe and underwent efforts to conceal the pipe in his clothing and further hid the sweatshirt under his feet on the floor of the passenger seat. Therefore, the trial court properly applied the statutory requirements to find Waeltz guilty beyond a reasonable doubt of possession of methamphetamine.

*The State was not required to prove Waeltz intended to use methamphetamine.*

Waeltz next contends that possession is a specific intent crime, requiring proof that he had "exclusive control over the contraband, with a further objective for [its] use

6

while in Bryan Waeltz's control." He claims that the evidence showed that Waeltz "did not have a conscious objective or desire to engage in the conduct or cause the result of controlling contraband, which in this case would be ingesting or selling such contraband." Waeltz further states that the "definition of intent in this case, means possession which requires 'exclusive control.' 'Exclusive control' is to have control with an objective. Possession requires something besides flushing it down the stool."

Waeltz misstates the law. His possession definition only requires the intent to have control over the substance, not intent to use or ingest the substance. See K.S.A. 2019 Supp. 21-5701(q). The statute for possession of a controlled substance is distinguishable from other specific intent crimes, such as possession of a controlled substance with the intent to distribute. See K.S.A. 21-5705.

Recently, a panel of this court addressed the mental state required for the possession of a controlled substance. *State v. Blackmon*, No. 123,988, 2023 WL 176649, at *4 (Kan. App. 2023) (unpublished opinion). The court noted the statute, "on its face, appears silent as to the required mental state for possession of a controlled substance." *Blackmon*, 2023 WL 176649, at *3. To interpret the mental state, the court relied on *State v. Rizal*, 310 Kan. 199, 445 P.3d 734 (2019), which interpreted the required mental state for possession of a controlled substance with intent to distribute. *Blackmon*, 2023 WL 176649, at *3.

Along the same line, in *Rizal*, the defendant argued the evidence was insufficient because she believed she possessed a lawful substance, not a controlled substance. 310 Kan. at 206-07. The court applied the culpable mental state, "imbedded in the definition of the word 'possession,'" noting that "a person must know the essence of the substance possessed; the fundamental quality that distinguishes that substance from another one." 310 Kan. at 206-07. The court also recognized that mistake-of-fact defenses may result from its interpretation but clarified the defense is available only when the defendant had

an actual belief that the nature of the substance was lawful. 310 Kan. at 208-09. Using *Rizal*, the *Blackmon* Court held that "[p]ossession of a controlled substance is a general intent crime, and Blackmon intended to and did knowingly possess a controlled substance." 2023 WL 176649, at *4.

*W*aeltz *was not an innocent possessor.*

Waeltz argues that the evidence shows that his "mental state was to disassociate himself from any control over the [m]ethamphetamine [p]ipe in question whether it contained [m]ethamphetamine or not." He also characterizes the evidence at trial as showing he "did not have a conscious objective or desire to engage in the conduct or cause the result of controlling the contraband, which in this case would be ingesting or selling such contraband." He concludes that there was no evidence that he "knew there was methamphetamine in the pipe."

The court in *Blackmon* discussed the mistake of fact defense, which "operates to shield a person from being convicted on the basis of innocent or otherwise lawful behavior." 2023 WL 176649, at *4. The defendant in *Blackmon* argued that he made a mistake of fact — believing he bought "pills containing MDMA but 'apparently bought at least one pill containing methamphetamine." 2023 WL 176649, at *4. The court held the defense did not apply because "[a]ny mistake by Blackmon about the specific controlled substance he possessed does not transform possession of methamphetamine into a specific intent crime." 2023 WL 176649, at *4.

*The mistake of fact defense does not apply here.*

Like *Blackmon*, Waeltz appears to argue that he was an innocent possessor because he did not know the nature of the item that he concealed in his sweatshirt. He argues he had "involuntary contact" with the pipe "without knowledge of whether there

was [m]ethamphetamine in the pipe." He also claims his mental state was to disassociate himself from any control over the pipe. Further, Waeltz argues that there was no evidence that he "knew there was [m]ethamphetamine in the pipe."

Contrary to Waeltz's argument, the evidence shows that he was aware of the illegal nature of the pipe. If he did not know of the pipe's nature, why did he try to conceal it from the police? In Mills' interview with Waeltz, Mills asked Waeltz if he knew what the pipe was, and Waeltz responded that "I knew what it was. I'm not dumb." The trial court found that "even if you accept Mr. Waeltz's statements during the course of the interview by Officer Mills, he was aware there was a meth pipe." Thus, the evidence does not support Waeltz's argument that he was an innocent possessor. The evidence does, however, support the trial court's finding that Waeltz knew the pipe contained methamphetamine and underwent efforts to conceal the pipe from detection.

*The trial court had sufficient evidence to support Waeltz's conviction.*

The trial court had sufficient evidence to convict Waeltz. We affirm Waeltz's conviction.

Affirmed.

9